1

2

3

4

5                    **UNITED STATES DISTRICT COURT**

6                         **DISTRICT OF NEVADA**

7

8    MARK ROGERS,                    )
                                     )
9              Petitioner,           )        3:02-cv-0342-ECR-RAM
                                     )
10   vs.                             )
                                     )        **ORDER**
11   E.K. McDANIEL, *et al.*,        )
                                     )
12             Respondents.          )
                                     )
13   _____/

14

15   Introduction

16             This capital habeas corpus action is before the Court with respect to a Motion to

17   Dismiss (docket #85) filed by respondents, and a Motion for Leave to Conduct Discovery

18   (docket #84) filed by petitioner.

19             Petitioner filed the discovery motion on July 24, 2007 (docket #84).  Respondents did

20   not respond to the Discovery Motion.

21             Respondents filed their motion to dismiss on August 10, 2007 (docket #85).  In that

22   motion, respondents claim that the statute of limitations bars all or some of the claims in petitioner's

23   second amended petition, that certain of petitioner's claims are procedurally defaulted, that one claim

24   is not cognizable, that one claim is not ripe, and that several claims are unexhausted in state court.

25   *See* Motion to Dismiss (docket #85), p. 1.  Petitioner filed an opposition to the motion to

26

1  dismiss on December 10, 2007 (docket #102), and a supplemental opposition on December 26, 2007

2  (docket #103) .  Respondents replied on February 22, 2008 (docket #107).

3          The Court will grant the motion to dismiss and deny it in part.  The Court will deny

4  petitioner's motion for leave to conduct discovery.

5  Background[1]

6          In its September 3, 1985 decision affirming petitioner's convictions and sentence,

7  on his direct appeal, the Nevada Supreme Court described, as follows, the facts of the case as

8  revealed by the evidence at trial:

9          On December 3, 1980, Frank and Linda Strode returned from a
        Thanksgiving trip to their home in an isolated part of Pershing County near
10      Majuba Mountain, where they resided with Frank's parents, Emery and Mary
        Strode, and Frank's sister, Meriam Strode Treadwell. When they entered the
11      parents' trailer, they found the dead bodies of Emery, Mary and Meriam under
        a blanket in a bedroom. Emery had been shot three times and stabbed twice
12      with a knife which was left in his chest. A pocket watch discovered in
        Emery's shirt pocket had been struck by one of the bullets; the hour hand of
13      the watch was stopped at one o'clock. Mary had been stabbed in the back and
        shot in the chest. Meriam, whose wrists were bound with an electric cord, died
14      from a single gunshot wound in her back. Emery and Meriam kept daily
        diaries. The last entry in both diaries was recorded on the morning of
15      December 2, 1980.

16          On December 1, 1980, between 4:30 and 5 p.m., Robert Schott gave
        defendant a ride from Winnemucca to Imlay. As soon as Rogers climbed into
17      Schott's truck, he looked nervously in both the back of the truck and the rear
        view mirror. Defendant introduced himself as John and claimed that he was a
18      musician going to Reno to look for a job. At one point during the drive,
        defendant blurted out: "You may not believe it but I am a good American.
19      You may not believe it but I'm on your side. I would fight for my country."

20          On December 2, 1980, between approximately 12:15 and 12:45 p.m.,
        David Hartshorn, a geologist working at the Majuba Hill Mine, observed
21      Rogers standing alongside a road near Majuba Canyon and offered him a ride.
        During the ride, Hartshorn gave defendant a can of Seven-Up to drink.
22      Defendant stated that "[s]omebody is shooting rockets ... and one of these
        days it will hit my pyramid and blow me up."  Rogers alighted at the Strode
23      residence with the Seven-Up can in hand.

24

25  _____

26          [1]  This statement of the background of this matter is set forth only to provide context for this
    order.  The Court does not intend, in this section of this order, to make any finding with respect to any
    disputed fact.

1        Between 12:30 and 2 p.m. that same day, Ray Horn, a mechanic at a nearby mine, was driving on a county road near Majuba Mountain. As he passed a dark metallic blue truck, a slender young man driving the truck shot at Horn several times. Between 3:30 and 4 p.m., Earl L. Smith, a highway maintenance worker saw Rogers standing on a road between Denio and Winnemucca and provided him a ride because defendant had run out of gasoline. Rogers was later observed traveling at an extremely high rate of speed in a blue truck, which was identified by its license number as the Strodes' truck.

On December 5, 1980, Rogers was refused entry into Canada. In conversing with a Canadian police officer, Rogers indicated that he was the King of North America. On January 4, 1981, defendant was arrested in Florida when he was seen riding on the bumper of a car, holding on to a luggage rack. After he was arrested, Rogers told police that God knew him and that we were all a part of mother nature. During fingerprinting, defendant refused to speak and wrote on a piece of paper that he belonged to the government. Later at the jail, defendant claimed that he had killed the Strode family in self-defense.

Rogers' fingerprints were lifted from various items in the Strode residence, including a Seven-Up can and a glass jar found in the bedroom under the blanket with the victims' bodies. At trial, the defense presented the testimony of several expert witnesses which indicated defendant was a paranoid schizophrenic at the time of evaluation and that defendant's behavior at the time of the commission of the crimes was consistent with psychotic paranoid delusions, schizophrenia and psychosis and that Rogers could not tell right from wrong or the nature and quality of his acts. One psychologist believed that defendant, who was trained in acting, was faking his symptoms. After finding the defendant guilty of the crimes charged, the jury imposed the death penalty for the three murder convictions, and prison terms for the attempted murder and grand larceny.

*Rogers v. State*, 101 Nev. 457, 705 P.2d 664, 667-68 (1985), *cert. denied*, 476 U.S. 1130 (1986); Petitioner's Exhibit 555.[2]

Petitioner appealed, and the Nevada Supreme Court affirmed on September 3, 1985. *Id.*; *see also* Petitioner's Exhibit 553 (petitioner's opening brief) and Petitioner's Exhibit 554 (petitioner's supplemental brief).  The United States Supreme Court denied petitioner's petition for a writ of certiorari on May 19, 1986.  *Rogers v. Nevada*, 476 U.S. 1130 (1986).

---

[2]    The exhibits cited in this order in the form "Exhibit ___," are those filed by respondents in support of their motion to dismiss, and located in the record at docket #86 through docket #95. The exhibits cited in this order in the form "Petitioner's Exhibit ___," are those filed by petitioner in support of his second amended petition, and located in the record at docket #77 and #102.

1    On February 26, 1986, petitioner filed a petition for post-conviction relief in the

2    state district court.  Petitioner's Exhibit 556; *see also* Petitioner's Exhibit 557 (supplemental

3    petition).  The state district court held an evidentiary hearing, at which petitioner testified.  On

4    September 29, 1986, the state district court denied the petition.  Petitioner appealed.  *See* Petitioner's

5    Exhibit 533 (opening brief).  On June 20, 1987, the Nevada Supreme Court dismissed the appeal.

6    Petitioner's Exhibit 558.[3]

7    On October 26, 1987, petitioner filed a petition for a writ of habeas corpus in this

8    Court, initiating the case of *Rogers v. Whitley,* 3:87-cv-0505-ECR.[4]   Counsel was appointed to

9    represent petitioner.  On July 27, 1989, the Court stayed that action so that petitioner could exhaust

10   certain claims in state court.  *Rogers v. Whitley*, 3:87-cv-0505-ECR, docket #53; *see also Rogers v.*

11   *Whitley*, 717 F.Supp. 706 (D.Nev. 1989); *Rogers v. Whitley*, 701 F.Supp. 757 (D.Nev. 1988).

12   On October 15, 1990, petitioner filed a second petition for writ of habeas corpus in

13   the state district court.  Petitioner's Exhibit 559.  On December 24, 1991, the petition was denied.

14   Petitioner appealed.  *See* Petitioner's Exhibit 560 (petitioner's opening brief).  The Nevada Supreme

15   Court dismissed the appeal on May 28, 1993.  Petitioner's Exhibit 561.[5]

16   On December 1, 1993, petitioner filed a second federal habeas corpus action

17   in this Court:  *Rogers v. Angelone*, 3:93-cv-0785-ECR.[6]   Two weeks later, on December 14, 1993,

18   petitioner's first federal habeas action was dismissed.  *See Rogers v. Whitley,* 3:87-cv-0505-ECR,

19   docket #101.  The petition in petitioner's second federal habeas action was amended and

20   supplemented, and respondents answered.  *See Rogers v. Angelone*, 3:93-cv-0785-ECR, docket #13,

21   #16, and #29.  On March 6, 1997, the Court ordered the action dismissed, without prejudice, in order

22

23        [3] The Court refers to this state-court proceeding as petitioner's "first state habeas action."

24        [4] The Court refers to *Rogers v. Whitley,* 3:87-cv-0505-ECR, as petitioner's "first federal habeas action."

25        [5] The Court refers to this state-court proceeding as petitioner's "second state habeas action."

26        [6] The Court refers to *Rogers v. Angelone*, 3:93-cv-0785-ECR, as petitioner's "second federal habeas action."

1    to permit petitioner to further exhaust claims in state court.  *Rogers v. Angelone*, 3:93-cv-0785-ECR,

2    docket #76, #81, #82.

3                On March 24, 1997, petitioner filed, in state district court, a third state habeas

4    petition.  Petitioner's Exhibit 562.  On March 25, 1998, the State moved to dismiss the petition.

5    On July 13, 1999, the state district court granted that motion in part and denied it in part, dismissing

6    certain of petitioner's claims and ordering the State to answer certain of petitioner's claims.

7    On May 1, 2000, the court dismissed the remaining claims.  Petitioner appealed.  *See* Petitioner's

8    Exhibit 563 (petitioner's opening brief).  The Nevada Supreme Court affirmed on May 13. 2002.[7]

9                On June 25, 2002, petitioner initiated this, his third, federal habeas action, by filing a

10   "renewed" petition for writ of habeas corpus (docket #11).

11               On November 24, 2004, petitioner moved for a stay of these proceedings, under

12   *Rohan ex rel. Gates v. Woodford*, 334 F.3d 803 (9th Cir.), *cert. denied*, 540 U.S. 1069 (2003),

13   contending that he is incompetent to proceed (docket #39).  On September 21 and 22, 2005, the

14   Court held an evidentiary hearing on the *Rohan* motion (docket #60, #61).  The Court denied the

15   motion in an order entered on October 24, 2005 (docket #58).  On May 18, 2006, the Court denied a

16   motion to reconsider (docket #69).

17               On December 14, 2006, petitioner filed a first amended petition (docket #75), and on

18   December 19, 2006, petitioner filed a second amended petition (docket #77).

19               On July 24, 2007, petitioner filed his motion for leave of court to conduct discovery

20   (docket #84).  Respondents did not respond to that motion.

21               On August 10, 2007, respondents filed their motion to dismiss (docket #85).

22   Petitioner filed an opposition to that motion on December 10, 2007 (docket #102), and a supplement

23   to the opposition on December 26, 2007 (docket #103) .   Respondents replied on February 22, 2008

24   (docket #107).

25

26             [7]  The Court refers to this state-court proceeding, pending between March 24, 1997, and
     May 13, 2002, as petitioner's "third state habeas action."

The Motion to Dismiss

    A.    Statute of Limitations

Respondents argue that the statute of limitations applicable to federal habeas corpus actions bars this action, or, alternatively, certain of petitioner's claims.

On April 24, 1996, the Antiterrorism and Effective Death Penalty Act (AEDPA) went into effect. Pub.L. No. 104-132, 110 Stat. 1214-1226 (1996). The AEDPA made various amendments to the statutes controlling federal habeas corpus practice. One of the amendments imposed a one-year statute of limitations on the filing of federal habeas corpus petitions. With respect to the statute of limitations, the habeas corpus statute provides:

> (d)(1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of --
>
> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1).

For convictions that became final prior to the enactment of the AEDPA, a petitioner had until April 24, 1997, to file a federal habeas corpus petition. *Patterson v. Stewart*, 251 F.3d 1243, 1245-46 (9th Cir. 2001). That is the case here. Petitioner's conviction became final on May 19, 1986, when the United States Supreme Court denied petitioner's petition for a writ of certiorari, with respect to the ruling of the Nevada Supreme Court affirming his conviction and

sentence. *See Rogers v. Nevada*, 476 U.S. 1130 (1986).  Therefore, without the benefit of any

tolling, the limitations period applicable to petitioner's federal habeas corpus action would have

expired on April 24, 1997.  *See Patterson*, 251 F.3d at 1245-46.

The AEDPA limitations period, however, is tolled while a "properly filed

application" for post conviction or other collateral relief is pending before a state court.  28 U.S.C.

§ 2244(d)(2).  A "properly filed application" is one in which the "delivery and acceptance are in

compliance with the applicable laws and rules governing filings." *Dictado v. Ducharme,* 244 F.3d

724, 726-27 (9th Cir. 2001), *quoting Artuz v. Bennett*, 531 U.S. 4, 121 S.Ct. 361, 364 (2000).

In *Pace v. DeGuglielmo*, 544 U.S. 408, 414 (2005), the Supreme Court held that a state

postconviction petition rejected by the state court as untimely is not "properly filed" within the

meaning of § 2244(d)(2), and, therefore, does not qualify for statutory tolling under that statute.

Petitioner filed a state-court post-conviction habeas corpus petition – initiating his

third state habeas action – on March 24, 1997, one month before the limitations period for his federal

petition was to expire.  *See* Second Amended Petition, p. 10,  ¶29; Petitioner's Exhibit 562.  That

state habeas petition was dismissed by the state district court on May 1, 2000.  *See* Second Amended

Petition, p. 21, ¶30.  The Nevada Supreme Court affirmed on May 13, 2002.  *See* Second Amended

Petition, p. 22, ¶32; *see also* Petitioner' Exhibit 564.

In its decision affirming the dismissal of petitioner's third state habeas action,

the Nevada Supreme Court ruled unequivocally that the petition had been untimely filed.  *See*

Petitioner's Exhibit 564, pp. 3-5.  Under *Pace*, therefore, petitioner's third state habeas petition did

not toll the limitations period under 28 U.S.C. § 2244(d)(2).  *See Pace*, 544 U.S. at 414.

The AEDPA limitations period is also subject to equitable tolling.  *Pace v.

DiGuglielmo*, 544 U.S. 408, 418 (2005).  The petitioner bears the burden of showing that equitable

tolling is appropriate.  *Espinoza-Matthews v. California*, 432 F.3d 1021, 1026 (9th Cir. 2005).

The petitioner must establish:  "(1) that he has been pursuing his rights diligently, and (2) that some

extraordinary circumstance stood in his way." *Pace*, 544 U.S. at 418.  The resolution of the equitable

7

1    tolling issue is "highly fact-dependent." *Espinoza-Matthews*, 432 F.3d at 1026; *Whalem/Hunt v.*

2    *Early*, 233 F.3d 1146, 1148 (9th Cir. 2000) (*en banc, per curiam*).

3              Here, the Court finds that petitioner has met his burden, and that equitable tolling is

4    warranted – but only with respect to certain of petitioner's claims.

5              In petitioner's second federal habeas action, on January 29, 1997, the Court entered an

6    order addressing the issue whether petitioner's claims were exhausted in state court.  *Rogers v.*

7    *Angelone*, 3:93-cv-0785-ECR, docket #76.  In that order, the Court found several of petitioner's

8    claims to be unexhausted.  *Id*. at 10.  Consequently, the Court required petitioner to make the

9    following election: either (1) voluntarily dismiss his habeas petition in order pursue state remedies

10   with respect to the unexhausted claims, or (2) abandon the unexhausted claims and proceed with

11   only the exhausted claims.  *Id*.  The Court stated in the order:

12              We recommend option (1) above whereby Petitioner voluntarily
             dismisses the petition now before this Court.  Petitioner may then proceed
13           through the Nevada state court system in order to exhaust the currently
             unexhausted claims.  Upon properly exhausting these claims, Petitioner may
14           seek federal habeas review of all possible grounds for relief.  The advantage of
             this course of action is that it enables Petitioner to argue all the claims for
15           relief in a single federal proceeding.  Furthermore, a voluntary dismissal of the
             instant petition would not prejudice in any way Petitioner's ability to seek
16           federal habeas corpus relief through a subsequent petition.  However,
             Petitioner must understand that, pursuant to recently enacted federal
17           legislation, there is a one year deadline between the time the conviction
             became final and the time the federal habeas corpus petition must be filed
18           (excluding the time during which a state post-conviction petition is pending
             and arguably excluding the time during which a federal habeas petition is
19           pending).  Petitioner must therefore be aware that if he does not exhaust his
             claims in a timely manner, they may become procedurally barred in federal
20           court.

21   *Id*. at 10-11.  In a footnote, the Court added:

22              In April 1996, Congress amended 28 U.S.C. § 2244, creating a one
             year deadline for the filing of a federal petition for writ of habeas corpus.
23           Petitioner should review § 2244(d) to learn how to calculate the limitations
             period as well as the tolling provisions.  The one year deadline begins to run
24           from the date of the amendment (April 1996) for convictions that were final
             prior to April 1996.

25

26   *Id*. at 10-11, footnote 9.

1    The respondents moved for reconsideration of the January 29, 1997 order.

2  *Rogers v. Angelone*, 3:93-cv-0785-ECR, docket #78.  That motion was denied.  *Rogers v. Angelone*,

3  3:93-cv-0785-ECR, docket #81.

4    On February 18, 1997, petitioner filed a Notice of Election of Voluntary Dismissal,

5  electing to dismiss his second federal habeas action in order to return to state court to exhaust his

6  unexhausted claims.  *Rogers v. Angelone*, 3:93-cv-0785-ECR, docket #79.  In that document,

7  petitioner's counsel stated:

8    This Court recommended that Petitioner elect Option One, a
     recommendation with which undersigned counsel are in agreement, and the
9    election of which undersigned counsel, on Petitioner's behalf, hereby give
     notice.
10

11  *Id*. at 2.  On March 6, 1997, pursuant to the Court's January 29, 1997 order, and petitioner's

12  February 18, 1997 election, the Court dismissed petitioner's second federal habeas action without

13  prejudice.  *Rogers v. Angelone*, 3:93-cv-0785-ECR, docket #81 and #82.

14    Plainly, in January and February 1997, when these events transpired, the Court was

15  proceeding with the beliefs that the applicable AEDPA one-year limitations period had been tolled

16  while petitioner's second federal habeas action was pending, and would be statutorily tolled while

17  petitioner litigated his claims in state court.   It was with this in mind that the Court assured

18  petitioner that "a voluntary dismissal of the instant petition would not prejudice in any way

19  Petitioner's ability to seek federal habeas corpus relief through a subsequent petition."  *See Rogers v.*

20  *Angelone*, 3:93-cv-0785-ECR, docket #79, p. 10.  It was also with these understandings in mind that

21  the Court recommended that petitioner voluntarily dismiss his second federal habeas action and

22  return to state court to exhaust his unexhausted claims.  *Id*.

23    Some four years after the dismissal of petitioner's second federal habeas action, in

24  *Duncan v. Walker,* 533 U.S. 167 (2001), the Supreme Court ruled that federal habeas proceedings do

25  not toll the AEDPA statute of limitations.  Then, about eight years after the dismissal of petitioner's

26  second federal habeas action, the Supreme Court decided *Pace*, and ruled that a state postconviction

9

1   petition rejected by the state court as untimely is not "properly filed" within the meaning of

2   28 U.S.C. § 2244(d)(2), and therefore does not statutorily toll the limitations period.  These rulings

3   undermined the understandings of the Court and the petitioner in this case, and rendered erroneous,

4   in retrospect, the guidance the Court extended to petitioner with respect to his petition in early 1997.

5   After *Duncan* and *Pace* were decided, petitioner unexpectedly found himself vulnerable to an

6   argument that this action is barred by the statute of limitations, despite his good-faith reliance on the

7   direction provided by the Court in 1997.

8           This Court finds that, looking at these circumstances in retrospect, petitioner was

9   affirmatively misled by the Court's recommendation that he voluntarily dismiss his second federal

10  habeas action, and by the Court's assurance that the voluntary dismissal would not prejudice his

11  ability to seek federal habeas corpus relief in a subsequent petition.  *Cf. Pliler v. Ford*, 542 U.S. 225

12  (2004); *Brambles v. Duncan*, 412 F.3d 1066 (9th Cir. 2005).  The Court finds that this amounts to

13  extraordinary circumstances, beyond petitioner's control, undermining his compliance with the

14  statute of limitations.  *See Pace*, 544 U.S. at 418.  There is no indication that petitioner has been less

15  than diligent in pursuing his appeal and his state and federal habeas petitions.  *See id*.

16          The Court will therefore grant petitioner equitable tolling of the statute of limitations,

17  from March 6, 1997 (the date on which his second federal habeas action was dismissed) to

18  June 25, 2002 (the date on which the Court received his original habeas corpus petition in this, his

19  third, federal habeas action).  The equitable tolling, however, only applies to the claims pled by

20  petitioner in his second federal habeas action, in his amended petition for writ of habeas corpus and

21  the supplement to that amended petition, both of which were on file, and constituted the operative

22  habeas petition in petitioner's second federal habeas action when it was dismissed.  *See Rogers v.*

23  *Angelone*, 3:93-cv-0785-ECR, docket #13 and #16.

24          Therefore, with respect to the claims pled by petitioner in his second federal habeas

25  action, in the amended petition and the supplement to that amended petition in that action, the

26

1   one-year limitations period did not begin to run until June 25, 2002, and it did not run out, absent the

2   benefit of any other tolling, until June 25, 2003.

3          However, this equitable tolling does not resolve all the limitations issues in this case.

4   That is because, after petitioner initiated the current federal habeas action by submitting his original

5   habeas petition on June 25, 2002, it was not until more than four years later, in December 2006, that

6   he filed his first and second amended habeas petitions, adding several new claims.  *See* Petition for

7   Writ of Habeas Corpus, docket # 11; Amended Petition for Writ of Habeas Corpus, docket #75;

8   Second Amended Petition for Writ of Habeas Corpus, docket #77.  This gives rise to relation-back

9   issues, under Federal Rule of Civil Procedure 15(c)(1)(B), which states:  "An amendment to a

10   pleading relates back to the date of the original pleading when ... the amendment asserts a claim or

11   defense that arose out of the conduct, transaction, or occurrence set out – or attempted to be set out

12   – in the original pleading[.]"  The next question, then, is the extent to which the claims asserted in

13   petitioner's second amended petition arise out of the conduct, transactions, or occurrences underlying

14   the claims in his original petition, which was filed within the limitations period, on

15   June 25, 2002.

16          In *Mayle v. Felix*, 545 U.S. 644 (2005), the Supreme Court held, in the context of

17   federal habeas corpus litigation, that "[s]o long as the original and amended petition state claims that

18   are tied to a common core of operative facts, relation back will be in order."  *Mayle*, 545 U.S. at 664.

19   However, [a]n amended habeas petition ... does not relate back (and thereby escape AEDPA's

20   one-year time limit) when it asserts a new ground for relief supported by facts that differ in both time

21   and type from those the original pleading set forth."  *Id*. at 650.  The *Mayle* decision instructed that

22   "conduct, transaction, or occurrence," as used in Rule 15(c), is not synonymous with "trial,

23   conviction, or sentence."  *Id*. at 656-64.

24          In short, then, if a claim – or, at least, its core operative facts – was pled in the

25   amended petition, or supplement to the amended petition, in petitioner's second federal habeas

26   action, and if it was also pled in the original petition in this case, the claim will garner equitable

1   tolling and relation back under *Mayle*, and will not be barred by the statute of limitations.  On the

2   other hand, if the core operative facts underlying a claim were pled for the first time in the first and

3   second amended petitions in this case, more than 20 years after petitioner's conviction became final,

4   and more than 10 years after the limitations period ran out, without the benefit of any tolling, the

5   claim is barred by the statute of limitations.

6          In light of these principles, the Court addresses each of the claims in petitioner's

7   second amended petition, with regard to the statute of limitations.

8          Ground 1

9          In Ground 1, petitioner claims that he was denied his constitutional right to a fair trial

10  before an impartial tribunal and jury, because of the presence of members of an organization known

11  as "Posse Comitatus" on the jury and in the courtroom.  Second Amended Petition (docket #77),

12  pp. 37-63.

13         This claim was first stated in this action in petitioner's first and second amended

14  petitions (docket #75 and #77).

15         Petitioner argues that, "[b]ecause certain facts regarding essential claims are not

16  known and because those facts are essential to several of Mr. Rogers' claims and can be

17  ascertained by the issuance of subpoenas, the AEDPA statute of limitations has yet to run."

18  Opposition to Motion to Dismiss, p. 8, lines 4-7; *see also*, *generally*, *id*., pp. 2-14.  With respect to

19  cases where there is delay in the discovery of the facts underlying a claim, the habeas corpus statute

20  provides that the limitation period runs from "the date on which the factual predicate of the claim or

21  claims presented could have been discovered through the exercise of due diligence."  28 U.S.C.

22  § 2244(d)(1)(D).   It is plain that petitioner is aware of "the factual predicate" for Ground 2;

23  petitioner has pled Ground 2 in his first and second amended petitions, and has, in those pleadings,

24  articulated the factual predicate for the claim.

25         Petitioner also argues that Ground 1 relates back to Ground 2 in his original petition,

26  submitted June 25, 2002.  Petitioner asserted, in Ground 2 of the original petition, that his rights

were violated by the trial court's denial of his motion for change of venue.  Petition for Writ of Habeas Corpus (docket #11) ("Original Petition"), pp. 7-8.  However, in that claim, petitioner made no mention of Posse Comitatus.  *Id*.  In Ground 2 of the original petition, petitioner focused on the rural nature of Pershing County, the attitudes of the residents of Pershing County, and the notoriety of petitioner's case.  *Id*.  The Court finds that Ground 1 in petitioner's second amended petition, and Ground 2 of petitioner's original petition do not share a common core of operative fact.  *See Mayle*, 545 U.S. at 661 (instructing that "common core of operative facts" must not be viewed at too high a level of generality).  Ground 1 does not relate back, for statute of limitations purposes, to petitioner's original petition.

Turning to the equitable-tolling issue, the Court finds that petitioner did not assert this claim, or any claim like it, in his second federal habeas action.  In Ground 2 of the amended petition in his second federal habeas action, petitioner asserted the claim that the trial court violated his constitutional rights by not granting his motion for change of venue.  *See* Amended Petition, docket #13 in Case Number 3:93-cv-0785-ECR, pp.6-7.  However, again, that claim was not based on the same operative facts as Ground 1 in the second amended petition in this case; in the claim in his second federal habeas action, petitioner did not mention Posse Comitatus, and did not allege that any juror was a member of, or influenced by, that group.

Therefore, as is discussed above, with respect to Ground 1 in his second amended petition, petitioner does not receive the benefit of equitable tolling or relation back under *Mayle*.  Ground 1 is barred by the statute of limitations.[8]

### Ground 2

In Ground 2 of his second amended petition, petitioner claims that he was denied his constitutional rights to due process of law, equal protection under the laws, a fair tribunal, and a reliable sentence, because of "compensatory bias" on the part of the trial judge.  Second Amended Petition, pp. 64-71.  Petitioner alleges that the trial judge was, at the time of trial, under investigation

---

[8]  Ground 1 is also unexhausted.  *See* Discussion, *infra*, Part E.

1   for corruption, and knew he was, and, therefore, was inclined to favor the prosecution in an attempt

2   to conceal his corrupt activity.  *Id*.

3          Petitioner argues, here again, that he has yet to discover facts essential to Ground 2,

4   and therefore the limitations period has not yet begun to run with respect to that claim. *See*

5   Opposition to Motion to Dismiss, pp. 2-14.  The Court finds that petitioner is demonstrably aware

6   of "the factual predicate" for Ground 2 – that is made plain by the fact that petitioner has pled

7   Ground 2 in his first and second amended petitions, and has, in those pleadings, articulated the

8   factual predicate for the claim.

9          Petitioner also argues that Ground 2 relates back to a Ground 17 in his original

10   petition. *See* Supplement to Opposition to Motion to Dismiss, p. 4.[9]  In Ground 17 of the original

11   petition, petitioner claims that, when the jury returned a guilty verdict, following the guilt phase of

12   his trial, the trial judge congratulated the jury and expressed that he concurred with their findings.

13   Original Petition, pp. 16-17.  Petitioner appears to suggest in that claim, in his original petition, that

14   the judge's remarks prejudiced the jury against petitioner in the subsequent penalty phase of his trial.

15   *Id*.  The Court finds that, under *Mayle*, Ground 2 in petitioner's second amended petition does not

16   relate back to Ground 17 in the original petition.  Ground 2 is based upon extensive facts not alleged

17   in Ground 17 of the original petition: the investigation of the judge, and his alleged compensatory

18   bias.  Indeed, Ground 17 in the original petition does not at all assert that the judge was generally

19   biased; that claim asserted only that the judge made improper comments to the jury.

20          Moreover, with respect to the equitable-tolling issue, the Court finds that petitioner

21   made no claim similar to, or based upon the same core operative facts as, Ground 2, in his amended

22   petition or the supplement to the amended petition in his second federal habeas action.

23

24

25          [9]  Petitioner actually refers to Ground 16 in his original petition. Petitioner's Supplement to

26   Opposition to Motion to Dismiss (docket #103), p. 4.  However, Ground 16 is a claim involving a jury
     instruction regarding burden of proof.  It appears, from petitioner's argument, that Ground 17 in the
     original petition is the claim to which he believes Ground 2 should relate back.

1       Therefore, with respect to Ground 2, petitioner does not receive the benefit of either

2  equitable tolling or relation back under *Mayle*. Ground 2 is barred by the statute of limitations.[10]

3              Ground 3

4       In Ground 3, petitioner claims that he was denied due process of law because of his

5  alleged insanity and incompetence.  Second Amended Petition, pp. 72-97.

6       Respondents appear to concede, and the Court finds, that Ground 3 relates back,

7  under *Mayle*, to petitioner's original petition in this action.  *See* Motion to Dismiss, p. 3.  In the

8  original petition, petitioner makes several claims that raise the question of petitioner's alleged mental

9  illness and incompetence, and raises issues with respect to the resulting effect on the fairness of

10 petitioner's trial.   Furthermore, the Court finds that similar claims were asserted in petitioner's

11 amended petition, and the supplement to the amended petition, in his second federal habeas action.

12 Therefore, with respect to Ground 3, petitioner receives the benefit of both equitable tolling and

13 relation back under *Mayle*. Ground 3 is not barred by the statute of limitations.

14             Ground 4

15      In Ground 4, petitioner claims that he was denied a fair trial because the trial court

16 failed to halt his trial when questions arose regarding petitioner's competence.  Second Amended

17 Petition, pp. 98-104.

18      With respect to this claim – to the extent it states a claim distinct from Ground 3 – the

19 Court finds that it does not relate back to petitioner's original petition.  There is no claim in the

20 original petition raising any issue with respect to the trial court's failure to halt petitioner's trial upon

21 the emergence of issues regarding his competence.

22      Furthermore, the Court finds that no comparable claim was asserted in petitioner's

23 amended petition, or the supplement to the amended petition, in his second federal habeas action.

24

25

26

_____

[10]  Ground 2 is also unexhausted.  *See* Discussion, *infra*, Part E.

15

1    Therefore, with respect to Ground 4, petitioner does not receive the benefit of either

2  relation back under *Mayle*, or equitable tolling.  Ground 4 is barred by the statute of limitations.[11]

3             Ground 5

4    In Ground 5, petitioner claims that he was denied effective assistance of his trial

5  counsel, in violation of his constitutional rights, on account of failures on the part of his counsel in

6  handling issues concerning his alleged mental illness.  Second Amended Petition, pp. 105-17.

7    Respondents appear to concede, and the Court finds, that Ground 5 relates back,

8  under *Mayle*, to petitioner's original petition in this action.  *See* Motion to Dismiss, p. 3; *see also*

9  Original Petition, pp. 38-44.  Furthermore, the Court finds that similar claims were asserted in

10 petitioner's amended petition and the supplement to the amended petition in his second federal

11 habeas action.  Amended Petition in Second Federal Habeas Action, pp. 64-73.  Therefore, with

12 respect to Ground 5, petitioner receives the benefit of both equitable tolling and relation back under

13 *Mayle*. Ground 5 is not barred by the statute of limitations.

14             Ground 6

15    In Ground 6, petitioner claims that he was denied effective assistance of his trial

16 counsel, because counsel did not conduct a sufficient punishment investigation.  Second Amended

17 Petition, pp. 118-68.

18    Respondents appear to concede, and the Court finds, that Ground 6 relates back,

19 under *Mayle*, to petitioner's original petition in this action.  *See* Motion to Dismiss, p. 3; *see also*

20 Original Petition, pp. 38-44.  Furthermore, the Court finds that similar claims were asserted in

21 petitioner's amended petition and the supplement to the amended petition in his second federal

22 habeas action.  Amended Petition in Second Federal Habeas Action, pp. 64-73.  Therefore, with

23 respect to Ground 6, petitioner receives the benefit of both equitable tolling and relation back under

24 *Mayle*. Ground 6 is not barred by the statute of limitations.

25

26

       [11]  Ground 4 is also unexhausted.  *See* Discussion, *infra*, Part E.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

<u>Ground 7</u>

In Ground 7, petitioner claims that, because he is mentally ill, his execution would violate the constitutional ban on cruel and unusual punishment.  Second Amended Petition, pp. 169-72.  As the Court understands this claim, petitioner focuses on the jury's treatment of petitioner's alleged mental illness at the penalty phase of his trial.  *See id*.

Respondents do not challenge Ground 7 on statute of limitations grounds. *See* Motion to Dismiss, p. 10.   Therefore, Ground 7 is not barred by the statute of limitations.

<u>Ground 8</u>

In Ground 8, petitioner claims that he was denied effective assistance of his trial counsel, in violation of his constitutional rights, because his counsel failed to conduct an adequate investigation of the facts surrounding the murders.  Second Amended Petition, pp. 173-75. Specifically, in Ground 8, petitioner alleges that his counsel failed to investigate potential evidence regarding how petitioner came to be at the residence where the murders occurred, and about petitioner's possible previous familiarity with that residence and with the victims.  *Id*.

The Court finds that this claim does not relate back to the original petition in this case.  There are no allegations in the original petition that relate at all to these matters.  *See* Original Petition, pp. 38-42.

Furthermore, the Court finds that no comparable claim was asserted in petitioner's amended petition or the supplement to the amended petition in his second federal habeas action.

Therefore, with respect to Ground 8, petitioner does not receive the benefit of either relation back under *Mayle*, or equitable tolling.  Ground 8 is barred by the statute of limitations.[12]

<u>Ground 9</u>

In Ground 9, petitioner claims that he was denied his constitutional rights as a result of the trial court's denial of his motion for change of venue.  Second Amended Petition, pp. 176-78.

---

[12]  Ground 8 is also unexhausted.  *See* Discussion, *infra*, Part E.

1    This claim relates back, under *Mayle*, to the original petition in this case, as petitioner

2  made much the same claim in the original petition.  *See* Original Petition, pp. 7-8.  Furthermore, the

3  Court finds that a similar claim was asserted in petitioner's amended petition in his second federal

4  habeas action.  Amended Petition in Second Federal Habeas Action, pp. 6-8.  Therefore, with respect

5  to Ground 9, petitioner receives the benefit of both equitable tolling and relation back under *Mayle*.

6  Ground 9 is not barred by the statute of limitations.

7    Ground 10

8    In Ground 10, petitioner claims that he was denied his constitutional rights as a result

9  of the trial court's denial of his motion to sequester the jury.  Second Amended Petition, pp. 179-80.

10    This claim relates back, under *Mayle*, to the original petition in this case, as petitioner

11  made much the same claim in the original petition.  *See* Original Petition, p. 8.  Furthermore, the

12  Court finds that a similar claim was asserted in petitioner's amended petition in his second federal

13  habeas action.  Amended Petition in Second Federal Habeas Action, pp. 8-9.  Therefore, with respect

14  to Ground 10, petitioner receives the benefit of both equitable tolling and relation back under *Mayle*.

15  Ground 10 is not barred by the statute of limitations.

16    Ground 11

17    In Ground 11, petitioner claims that he was denied his constitutional rights when the

18  trial court "tried three separate pleadings in a single proceeding."  Second Amended Petition,

19  pp. 181-82.

20    This claim relates back, under *Mayle*, to the original petition in this case, as petitioner

21  made much the same claim in the original petition.  *See* Original Petition, p. 7.  Furthermore, the

22  Court finds that a similar claim was asserted in petitioner's amended petition in his second federal

23  habeas action.  Amended Petition in Second Federal Habeas Action, pp. 3-4.  Therefore, with respect

24  to Ground 11, petitioner receives the benefit of both equitable tolling and relation back under *Mayle*.

25  Ground 11 is not barred by the statute of limitations.

26

<u>Ground 12</u>

In Ground 12, petitioner claims that he was denied his constitutional rights, because the trial judge instructed his counsel "not to ask prospective jurors during voir dire whether they would always require the death penalty." Second Amended Petition, p. 183.

This claim relates back, under *Mayle*, to the original petition in this case, as petitioner made much the same claim in the original petition. *See* Original Petition, pp. 8-9. Furthermore, the Court finds that a similar claim was asserted in petitioner's amended petition in his second federal habeas action. Amended Petition in Second Federal Habeas Action, pp. 12-13. Therefore, with respect to Ground 12, petitioner receives the benefit of both equitable tolling and relation back under *Mayle*. Ground 12 is not barred by the statute of limitations.

<u>Ground 13</u>

In Ground 13, petitioner claims that he was denied his constitutional rights when the trial court limited his counsel's ability question the potential jurors regarding the verdicts they gave in their last jury service. Second Amended Petition, pp. 184-85.

This claim relates back, under *Mayle*, to the original petition in this case, as petitioner made much the same claim in the original petition. *See* Original Petition, p. 8. Furthermore, the Court finds that a similar claim was asserted in petitioner's amended petition in his second federal habeas action. *See* Amended Petition in Second Federal Habeas Action, pp. 10-12. Therefore, with respect to Ground 13, petitioner receives the benefit of both equitable tolling and relation back under *Mayle*. Ground 13 is not barred by the statute of limitations.

<u>Grounds14 and 17</u>

In Grounds 14 and 17, petitioner claims that he was denied his constitutional rights when the trial court refused his request for a jury instruction concerning the effect of his alleged mental illness on his ability to form intent; in addition, in Ground 14, petitioner claims that his appellate counsel was ineffective for failing to raise this issue on appeal. Second Amended Petition, p. 186.

These claims relate back, under *Mayle*, to the original petition in this case, as petitioner made much the same claim in the original petition.  *See* Original Petition, pp. 11-12, 45.  Furthermore, the Court finds that a similar claim was asserted in petitioner's amended petition in his second federal habeas action.  *See* Amended Petition in Second Federal Habeas Action, pp. 19-20, 36; *see also* Supplement to Amended Petition in Second Federal Habeas Action, pp. 1-2.  Therefore, with respect to Grounds 14 and 17, petitioner receives the benefit of both equitable tolling and relation back under *Mayle*.  Grounds 14 and 17 are not barred by the statute of limitations.

## Ground 15

In Ground 15, petitioner claims that he was denied due process of law when the trial court required him to prove insanity by a preponderance of the evidence.  Second Amended Petition, pp. 187-88.

This claim relates back, under *Mayle*, to the original petition in this case, as petitioner made much the same claim in the original petition.  *See* Original Petition, p. 12.  Furthermore, the Court finds that a similar claim was asserted in petitioner's amended petition in his second federal habeas action.  *See* Amended Petition in Second Federal Habeas Action, p. 22.  Therefore, with respect to Ground 15, petitioner receives the benefit of both equitable tolling and relation back under *Mayle*.  Ground 15 is not barred by the statute of limitations.

## Ground 16

In Ground 16, petitioner claims that he was denied his constitutional rights when the trial court instructed the jury that, if he were found not guilty by reason of insanity, he would be committed to a state hospital and might be discharged; in addition, petitioner claims, in Ground 16, that his counsel were ineffective in failing to object to that instruction at trial and in failing to raise this issue on appeal.  Second Amended Petition, pp. 189.

This claim relates back, under *Mayle*, to the original petition in this case, as petitioner made much the same claim in the original petition.  *See* Original Petition, pp. 13-15, 41, 45.  Furthermore, the Court finds that a similar claim was asserted in petitioner's amended petition in his

second federal habeas action.  *See* Amended Petition in Second Federal Habeas Action, pp. 29-30, 74.  Therefore, with respect to Ground 16, petitioner receives the benefit of both equitable tolling and relation back under *Mayle*.  Ground 16 is not barred by the statute of limitations.

Ground 18

In Ground 18, petitioner claims that he was denied his constitutional rights because the trial court reduced the State's burden of proof in instructions to the jury, because his trial counsel did not object to those instructions, and because his appellate counsel did not raise the issue on appeal.  Second Amended Petition, pp. 191-94.

This claim relates back, under *Mayle*, to the original petition in this case, as petitioner made much the same claim in the original petition.  *See* Original Petition, pp. 15-16, 39, 45.  Furthermore, the Court finds that a similar claim was asserted in petitioner's amended petition in his second federal habeas action.  *See* Supplement to Amended Petition in Second Federal Habeas Action, pp. 6-7.  Therefore, with respect to Ground 18, petitioner receives the benefit of both equitable tolling and relation back under *Mayle*.  Ground 18 is not barred by the statute of limitations.

Ground 19

In Ground 19, petitioner claims that his constitutional right to due process of law was violated by the "trial court's admission of evidence regarding aggravating prior felony convictions."  Second Amended Petition, pp. 195-99.  In Ground 19, petitioner alleges that he was given inadequate notice of the State's intention to introduce evidence, at the penalty phase of the trial, of alleged prior convictions of petitioner.

This claim relates back, under *Mayle*, to the original petition in this case, as petitioner made much the same claim in the original petition.  *See* Original Petition, pp. 18-20.  Furthermore, the Court finds that a similar claim was asserted in petitioner's amended petition in his second federal habeas action.  *See* Amended Petition in Second Federal Habeas Action, pp. 36-37.

1    Therefore, with respect to Ground 19, petitioner receives the benefit of both equitable tolling and

2    relation back under *Mayle*.  Ground 19 is not barred by the statute of limitations.

3                                        Grounds 20 and 21

4                 In Ground 20, petitioner claims that his constitutional rights were violated because the

5    State knowingly offered false and misleading testimony in aggravation of murder.  Second Amended

6    Petition, pp. 200-03.  In addition, petitioner also claims, in Ground 20, that his constitutional rights

7    were violated by the trial court's failure to withdraw the death sentence based on this alleged

8    unreliable evidence, and that his trial counsel was ineffective in failing to challenge this alleged

9    unreliable evidence.  *Id*.  In Ground 21, petitioner claims that his constitutional rights were violated

10   because the jury considered materially inaccurate evidence at the penalty phase of his trial.  Second

11   Amended Petition, pp. 204-08.  In addition, petitioner also claims, in Ground 21, that his trial

12   counsel was ineffective in failing to investigate the alleged materially inaccurate evidence.  *Id*.   The

13   subject of Grounds 20 and 21 is one of the prior convictions that the prosecution offered at the

14   penalty hearing as an aggravating factor; petitioner claims that it was, in fact, not a valid conviction

15   under the law of Ohio, where the purported conviction occurred.

16                In Ground 21 of his original petition in this case, petitioner pled the operative facts at

17   the core of Grounds 20 and 21 in his second amended petition.  *See* Original Petition, pp. 22-25; *see*

18   *also id*., p. 42.  Grounds 20 and 21, therefore, relate back, under *Mayle*, to the date of filing of the

19   original petition.

20                Also, in his supplement to the amended petition in his second federal habeas action,

21   petitioner pled the operative facts upon which Grounds 20 and 21 are based.  *See* Supplement to

22   Amended Petition in Second Federal Habeas Action, p. 14.  Therefore equitable tolling is warranted

23   with respect to Grounds 20 and 21.

24                Therefore, with respect to Grounds 20 and 21, petitioner receives the benefit of both

25   equitable tolling and relation back under *Mayle*, and Grounds 20 and 21 are not barred by the statute

26   of limitations.

1          Ground 22

2          In Ground 22, petitioner claims that "the trial court's instructions on burden of proof

3     effectively prevented the jury from considering constitutionally relevant mitigating evidence" in

4     violation of the Eighth Amendment.  Second Amended Petition, pp. 209-10.  In addition, petitioner

5     also claims, in Ground 22, that his trial counsel was ineffective for failing to object to those

6     instructions, and that his appellate counsel was ineffective for failing to raise the issue on appeal.  *Id*.

7          This claim relates back, under *Mayle*, to the original petition in this case, as petitioner

8     made much the same claim there.  *See* Original Petition, pp. 36-37.  Furthermore, the Court finds that

9     a similar claim was asserted in petitioner's supplement to his amended petition in his second federal

10    habeas action.  *See* Supplement to Amended Petition in Second Federal Habeas Action,

11    pp. 21-22.  Therefore, with respect to Ground 22, petitioner receives the benefit of both equitable

12    tolling and relation back under *Mayle*.  Ground 22 is not barred by the statute of limitations.

13         Ground 23

14         In Ground 23, petitioner claims that "the trial court's instruction on, and jury finding

15    of, the aggravating circumstance that the murder involved torture, depravity of mind, and mutilation,

16    were unconstitutionally vague" in violation of his constitutional rights.  Second Amended Petition,

17    pp. 211-12.

18         This claim relates back, under *Mayle*, to the original petition in this case, as petitioner

19    made much the same claim in the original petition.  *See* Original Petition, p. 31.  Furthermore, the

20    Court finds that a similar claim was asserted in petitioner's amended petition in his second federal

21    habeas action.  *See* Amended Petition in Second Federal Habeas Action, pp. 39-40.  Therefore, with

22    respect to Ground 23, petitioner receives the benefit of both equitable tolling and relation back under

23    *Mayle*.  Ground 23 is not barred by the statute of limitations.

24

25

26

1     Ground 24

2          In Ground 24, petitioner claims that "the trial court violated the Eighth and Fourteenth

3    Amendments ... by instructing the jury regarding the availability of clemency."  Second Amended

4    Petition, pp. 213-14.

5          This claim relates back, under *Mayle*, to the original petition in this case, as petitioner

6    made a similar claim in the original petition.  *See* Original Petition, pp. 31-32.  Furthermore, the

7    Court finds that a similar claim was asserted in petitioner's supplement to the amended petition in

8    his second federal habeas action.  *See* Supplement to Amended Petition in Second Federal Habeas

9    Action, pp. 26-27.  Therefore, with respect to Ground 24, petitioner receives the benefit of both

10   equitable tolling and relation back under *Mayle*.  Ground 24 is not barred by the statute of

11   limitations.

12     Ground 25

13          In Ground 25, petitioner claims that "the trial court violated the Eighth and Fourteenth

14   Amendments ... by presenting the jury with a single weighing form for all three murders."  Second

15   Amended Petition, pp. 215-16.

16          This claim relates back, under *Mayle*, to the original petition in this case, as petitioner

17   made essentially the same claim in the original petition.  *See* Original Petition, p. 29.  Furthermore,

18   the Court finds that essentially the same claim was asserted in petitioner's amended petition in his

19   second federal habeas action.  *See* Amended Petition in Second Federal Habeas Action, p. 56.

20   Therefore, with respect to Ground 25, petitioner receives the benefit of both equitable tolling and

21   relation back under *Mayle*.  Ground 25 is not barred by the statute of limitations.

22     Ground 26

23          In Ground 26, petitioner claims that his constitutional rights were violated "because

24   the 'equal and exact justice' instruction given during trial improperly minimized the state's burden of

25   proof."  Second Amended Petition, pp. 217-18.

26

24

1    This claim relates back, under *Mayle*, to the original petition in this case, as petitioner

2    made essentially the same claim in the original petition.  *See* Original Petition, p. 35.  Furthermore,

3    the Court finds that a similar claim was asserted in petitioner's supplement to the amended petition

4    in his second federal habeas action.  *See* Supplement to Amended Petition in Second Federal Habeas

5    Action, p. 18.  Therefore, with respect to Ground 26, petitioner receives the benefit of both equitable

6    tolling and relation back under *Mayle*.  Ground 26 is not barred by the statute of limitations.

7    <u>Ground 27</u>

8    In Ground 27, petitioner claims that "the district attorney's improper closing argument

9    at the penalty phase" violated his constitutional rights."  Second Amended Petition,

10   pp. 219-22.

11   This claim relates back, under *Mayle*, to the original petition in this case, as petitioner

12   made essentially the same claim in the original petition.  *See* Original Petition, pp. 25-28.

13   Furthermore, the Court finds that a similar claim was asserted in petitioner's amended petition in his

14   second federal habeas action.  *See* Amended Petition in Second Federal Habeas Action, pp. 58-63.

15   Therefore, with respect to Ground 27, petitioner receives the benefit of both equitable tolling and

16   relation back under *Mayle*.  Ground 27 is not barred by the statute of limitations.

17   <u>Ground 28</u>

18   In Ground 28, petitioner claims that "the trial court's failure to provide appellate

19   counsel with a complete record from the trial violated Mr. Rogers' ... federal constitutional right to

20   due process."  Second Amended Petition, pp. 219-22.  Additionally, petitioner claims, in Ground 28,

21   that his appellate counsel was inadequate for failing to obtain a missing transcript, failing to

22   thoroughly review the record, and failing to raise on appeal an issue regarding comments made by

23   the trial judge during jury voir dire regarding the prosecution's burden of proof.  *Id*.

24   This claim relates back, under *Mayle*, to the original petition in this case, as petitioner

25   made essentially these same claims in the original petition.  *See* Original Petition, pp. 15-16, 45, 47,

26   49-50.  Furthermore, the Court finds that similar claims were asserted in petitioner's amended

1  petition, and the supplement to that petition, in his second federal habeas action.  *See* Amended

2  Petition in Second Federal Habeas Action, p. 74; Supplement to Amended Petition in Second

3  Federal Habeas Action, pp. 6, 37.  Therefore, with respect to Ground 28, petitioner receives the

4  benefit of both equitable tolling and relation back under *Mayle*.  Ground 28 is not barred by the

5  statute of limitations.

6              Ground 29

7              In Ground 29, petitioner claims that he "was denied his state and federal

8  constitutional right to the effective assistance of state post-conviction counsel."  Second Amended

9  Petition, pp. 226-30.  Petitioner claims that his state post-conviction counsel failed to conduct an

10 adequate investigation.  *Id*.

11             This claim relates back, under *Mayle*, to the original petition in this case, as petitioner

12 made similar claims in the original petition.  *See* Original Petition, pp. 48-49, 50.  Furthermore, the

13 Court finds that similar claims were asserted in petitioner's supplement to the amended petition in

14 his second federal habeas action.  *See* Supplement to Amended Petition in Second Federal Habeas

15 Action, pp. 23-24.  Therefore, with respect to Ground 29, petitioner receives the benefit of both

16 equitable tolling and relation back under *Mayle*.  Ground 29 is not barred by the statute of

17 limitations.

18             Ground 30

19             In Ground 30, petitioner claims that, because he is mentally ill, his execution would

20 violate the constitutional ban on cruel and unusual punishment.  Second Amended Petition,

21 pp. 231-32.  In Ground 30, petitioner alleges that petitioner would be unable to comprehend the

22 connection between the offenses for which he was sentenced to death and his execution.

23             Respondents do not challenge Ground 30 on statute of limitations grounds.  Rather,

24 respondents take the position that the claim is not ripe.  *See* Motion to Dismiss, p. 10.  Ground 30 is

25 not barred by the statute of limitations.

26

1    Ground 31

2         In Ground 31, petitioner claims that he was denied his constitutional rights "due to the

3    failure of the Nevada Supreme Court to conduct fair and adequate appellate review."  Second

4    Amended Petition, pp. 233-36.  Petitioner claims that the Nevada Supreme Court did not adequately

5    conduct the mandatory review of his conviction and sentence mandated by NRS 177.055(2).  *Id*.

6         Petitioner did not state any such claim, or any claim based on the same operative

7    facts, in his original petition in this case.  *See  Mayle*, 545 U.S. at 664.  Therefore, Ground 31 does

8    not relate back, for statute of limitations purposes, to the date of filing of the original petition.

9    *See* Supplement to Opposition to Motion to Dismiss, pp. 4-5 (conceding that Ground 31 does not

10   relate back to any claim in the original petition).

11        Furthermore, the Court finds that no such claim was made in petitioner's amended

12   petition, or the supplement to that petition, in his second federal habeas action.

13        Therefore, with respect to Ground 31, petitioner receives the benefit of neither

14   equitable tolling nor relation back under *Mayle*.  Ground 31 is barred by the statute of limitations.[13]

15   Ground 32

16        In Ground 32, petitioner claims that execution by lethal injection violates the

17   constitutional prohibition against cruel and unusual punishment.  Second Amended Petition,

18   pp. 237-50.

19        Petitioner included such a claim in his original petition in this case.  *See* Original

20   Petition, p. 37.[14]  Furthermore, the Court finds that a similar claim was asserted in petitioner's

21   supplement to the amended petition in his second federal habeas action.  *See* Supplement to

22   Amended Petition in Second Federal Habeas Action, pp. 7-8.  Therefore, with respect to Ground 32,

23

24        [13]  Ground 31 is also unexhausted.  *See* Discussion, *infra*, Part E.

25        [14]  It appears that petitioner's suggestion that this claim was not included in the original petition
26   is erroneous.  *See* Supplement to Opposition to Motion to Dismiss, pp. 4-5 (stating that Ground 32 does
     not relate back to any claim in the original petition).

27

petitioner receives the benefit of both equitable tolling and relation back under *Mayle*.  Ground 32 is not barred by the statute of limitations.

Ground 33

In Ground 33, petitioner claims that his conviction and sentence are unconstitutional because his "capital trial and sentencing and review on direct appeal were conducted before state judicial officers whose tenure in office was not during good behavior but whose tenure was dependent on popular election."  Second Amended Petition, pp. 251-52.

Petitioner did not state any such claim, or any claim based on the same core of operative facts, in his original petition in this case.  *See  Mayle*, 545 U.S. at 664.  Therefore, Ground 33 does not relate back, for statute of limitations purposes, to the date of filing of the original petition.  *See* Supplement to Opposition to Motion to Dismiss, pp. 4-5 (conceding that Ground 33 does not relate back to any claim in the original petition).

Furthermore, the Court finds that no such claim was made in petitioner's amended petition, or the supplement to that petition, in his second federal habeas action.

Therefore, with respect to Ground 33, petitioner receives the benefit of neither equitable tolling nor relation back under *Mayle*.  Ground 33 is barred by the statute of limitations.[15]

Ground 34

In Ground 34, petitioner claims that his death sentence is unconstitutional "due to the restrictive conditions on Nevada's death row."  Second Amended Petition, pp. 253-54.

Petitioner did not state any such claim, or any claim based on the same core of operative facts, in his original petition in this case.  *See  Mayle*, 545 U.S. at 664.  Therefore, Ground 34 does not relate back, for statute of limitations purposes, to the date of filing of the original petition.  *See* Supplement to Opposition to Motion to Dismiss, pp. 4-5 (conceding that Ground 34 does not relate back to any claim in the original petition).

---

[15]  Ground 33 is also unexhausted.  *See* Discussion, *infra*, Part E.

1    Furthermore, the Court finds that no such claim was made in petitioner's amended

2    petition, or the supplement to that petition, in his second federal habeas action.

3    Therefore, with respect to Ground 34, petitioner receives the benefit of neither

4    equitable tolling nor relation back under *Mayle*.  Ground 34 is barred by the statute of limitations.[16]

5    Ground 35

6    In Ground 35, petitioner claims that his death sentence is unconstitutional "because of

7    the risk that the irreparable punishment of execution will be applied to innocent persons."  Second

8    Amended Petition, pp. 255-56.

9    Petitioner did not state any such claim, or any claim based on the same core of

10   operative facts, in his original petition in this case.  *See  Mayle*, 545 U.S. at 664.  Therefore,

11   Ground 35 does not relate back, for statute of limitations purposes, to the date of filing of the original

12   petition.  *See* Supplement to Opposition to Motion to Dismiss, pp. 4-5 (conceding that Ground 35

13   does not relate back to any claim in the original petition).

14   Furthermore, the Court finds that no such claim was made in petitioner's amended

15   petition, or the supplement to that petition, in his second federal habeas action.

16   Therefore, with respect to Ground 35, petitioner receives the benefit of neither

17   equitable tolling nor relation back under *Mayle*.  Ground 35 is barred by the statute of limitations.[17]

18   Ground 36

19   In Ground 36, petitioner claims that his death sentence is unconstitutional "because

20   the Nevada capital punishment system operates in an arbitrary and capricious manner."  Second

21   Amended Petition, pp. 257-60.  In Ground 36, petitioner focuses on the breadth of the statutory

22   aggravating circumstances in Nevada's death penalty statutes, and asserts that those aggravating

23   circumstances are so broad that the death penalty is effectively permitted in Nevada for all first

24

25   _____

26       [16]  Ground 34 is also unexhausted.  *See* Discussion, *infra*, Part E.

         [17]  Ground 35 is also unexhausted.  *See* Discussion, *infra*, Part E.

1   degree murders.  *Id*.  Petitioner also asserts in this claim that, in Nevada, capital punishment is

2   imposed disproportionately on racial minorities.  *Id*.

3           Petitioner did not state any such claim, or any claim based on the same core of

4   operative facts, in his original petition in this case.  *See Mayle*, 545 U.S. at 664.  Therefore,

5   Ground 36 does not relate back, for statute of limitations purposes, to the date of filing of the original

6   petition.  *See* Supplement to Opposition to Motion to Dismiss, pp. 4-5 (conceding that Ground 36

7   does not relate back to any claim in the original petition).

8           Furthermore, the Court finds that no such claim was made in petitioner's amended

9   petition, or the supplement to that petition, in his second federal habeas action.

10          Therefore, with respect to Ground 36, petitioner receives the benefit of neither

11  equitable tolling nor relation back under *Mayle*.  Ground 36 is barred by the statute of limitations.[18]

12          <u>Ground 37</u>

13          In Ground 37, petitioner claims that his death sentence is unconstitutional because the

14  death penalty is cruel and unusual punishment.  Second Amended Petition, pp. 261-62.

15          Petitioner did not state any such claim, or any claim based on the same core of

16  operative facts, in his original petition in this case.  *See  Mayle*, 545 U.S. at 664.  Therefore,

17  Ground 37 does not relate back, for statute of limitations purposes, to the date of filing of the original

18  petition.  *See* Supplement to Opposition to Motion to Dismiss, pp. 4-5 (conceding that Ground 37

19  does not relate back to any claim in the original petition).

20          Furthermore, the Court finds that no such claim was made in petitioner's amended

21  petition, or the supplement to that petition, in his second federal habeas action.

22          Therefore, with respect to Ground 37, petitioner receives the benefit of neither

23  equitable tolling nor relation back under *Mayle*.  Ground 37 is barred by the statute of limitations.

24

25

26

---

[18]  Ground 36 is also unexhausted.  *See* Discussion, *infra*, Part E.

1        Ground 38

2            In Ground 38, petitioner claims that his conviction and sentence are unconstitutional

3    because of the cumulative effect of errors described in his other grounds for relief.  Second Amended

4    Petition, p. 263.  Because several of petitioner's other claims are not barred by the statute of

5    limitations, neither is Ground 38.

6            Summary - Statute of Limitations

7            The Court finds that Grounds 1, 2, 4, 8, 31, 33, 34, 35, 36, and 37, of petitioner's

8    second amended petition are barred by the statute of limitations.

9        B.    Procedural Default

10           Respondents contend that the doctrine of procedural default precludes this court from

11   considering the merits of Grounds 12, 14, 15, 16, 17, 18, 22, 25, 26, 27, 28, 29, and 32 in petitioner's

12   second amended petition.

13           Procedural Default Standards

14           A federal court generally will not review a claim for habeas corpus relief if the

15   decision of the state court denying the claim rested on a state law ground that is independent of the

16   federal question and adequate to support the judgment.  *Coleman v. Thompson*, 501 U.S. 722,

17   730-31 (1991).  The Court in *Coleman* stated the effect of a procedural default as follows:

18           In all cases in which a state prisoner has defaulted his federal claims in
             state court pursuant to an independent and adequate state procedural
19           rule, federal habeas review of the claims is barred unless the prisoner
             can demonstrate cause for the default and actual prejudice as a result of
20           the alleged violation of federal law, or demonstrate that failure to
             consider the claims will result in a fundamental miscarriage of justice.
21

22   *Coleman*, 501 U.S. at 750; *see also Murray v. Carrier*, 477 U.S. 478, 485 (1986).

23           A state procedural bar is "independent" if the state court explicitly invokes the

24   procedural rule as a separate basis for its decision.  *McKenna v. McDaniel*, 65 F.3d 1483, 1488

25   (9th Cir. 1995).  The state procedural bar is not "independent" if the application of the procedural rule

26   depends on a consideration of federal law.  *Park v. California*, 202 F.3d 1146, 1152

1  (9th Cir. 2000).  Also, if the state court's decision fails "to specify which claims were barred for

2  which reasons," the Ninth Circuit has held that the ambiguity may serve to defeat the independence

3  of the state procedural bar.  *Valerio v. Crawford*, 306 F.3d 742, 775 (9th Cir. 2002) (*en banc*);

4  *Koerner v. Grigas*, 328 F.3d 1039, 1050 (9th Cir. 2003).

5         A state procedural rule is "adequate" if it is "clear, consistently applied, and

6  well-established at the time of the petitioner's purported default."  *Calderon v. United States Dist.*

7  *Court (Bean)*, 96 F.3d 1126, 1129 (9th Cir. 1996) (citation and internal quotation marks omitted).

8         In *Bennett v. Mueller*, 322 F.3d 573, 585-86 (9th Cir. 2003), the court of appeals

9  announced a burden-shifting test to be applied in analyzing the adequacy of a state procedural bar.

10  Under *Bennett*, the State carries the initial burden of adequately pleading "the existence of an

11  independent and adequate state procedural ground as an affirmative defense."  *Bennett*, 322 F.3d at

12  586.  The burden then shifts to the petitioner "to place that defense in issue," which the petitioner

13  may do "by asserting specific factual allegations that demonstrate the inadequacy of the state

14  procedure, including citation to authority demonstrating inconsistent application of the rule."  *Id.*

15  If the petitioner meets this burden, "the ultimate burden" of proving the adequacy of the state bar

16  rests with the State, which must demonstrate "that the state procedural rule has been regularly and

17  consistently applied in habeas actions."  *Id.*

18         <u>Analysis</u>

19         Respondents argue that the claims presented by petitioner in the Nevada Supreme

20  Court only in his third state habeas action – Grounds 12, 14, 15, 16, 17, 18, 22, 25, 26, 27, 28, 29,

21  and 32 of petitioner's second amended petition in this action – are procedurally defaulted.

22         The Nevada Supreme Court ruled on the appeal from the denial of habeas relief in

23  petitioner's third state habeas action on May 13, 2002.  Petitioner's Exhibit 564.  In the Order of

24  Affirmance, the Nevada Supreme Court stated:

25         Rogers's habeas petition was filed more than one year after this
       court issued its remittitur on direct appeal.  Therefore, absent a showing of
26     good cause for this delay, the entire petition is untimely. [Footnote: *See*

NRS 34.726(1).]  In regard to any new claims he raises, Rogers must show cause for not raising them in earlier proceedings.  [Footnote: NRS 34.810(2).]  However, Rogers does not seriously address the issue of untimeliness and procedural default.

\*   \*   \*

Absent a showing of good cause to overcome procedural default, this court will consider claims only if the petitioner demonstrates that failure to consider them will result in a fundamental miscarriage of justice. [Footnote omitted.] Although Rogers does not raise this issue, we have considered his petition in light of this standard.  We conclude that none of his claims establishes a fundamental miscarriage of justice.  Thus, we conclude that all of the claims presented in Rogers's petition are procedurally barred, and we affirm the district court's order on this independent ground. [Footnote: *See Harris v. Reed*, 489 U.S. 255, 261-62 (1989) (discussing necessity of a plain statement indicating that the state court actually relied on a procedural bar as an independent basis for disposition of the case).]

Order of Affirmance, filed May 13, 2002 (Petitioner's Exhibit 564), pp. 2-5.  The Nevada Supreme Court applied Nevada's statute of limitations as an independent state-law procedural ground, in affirming the dismissal of petitioner's third state habeas action.[19]

In asserting that the Nevada Supreme Court applied NRS 34.726(1) as an independent and adequate state procedural ground for the dismissal of petitioner's third state habeas action, the respondents have carried their initial burden with respect to this affirmative defense.  *See Bennett*, 322 F.3d at 586.

Petitioner responds, claiming that the statute of limitations at NRS 34.726 is not adequate to bar his federal habeas action.

The Ninth Circuit Court of Appeals held NRS 34.726 to be an adequate state-law procedural bar, as of March 1996.  *Moran v. McDaniel*, 80 F.3d 1261, 1268-70 (9ᵗʰ Cir. 1996); *see also Valerio v. Crawford*, 306 F.3d 742, 778 (9ᵗʰ Cir. 2002) (*en banc*).

---

[19]  The Nevada Supreme Court also ruled that the claims asserted for the first time in petitioner's third state habeas action were procedurally barred under NRS 34.810, because it was a successive petition.  Respondents asserts that ruling as a further basis for their procedural-default defense.  However, as respondents recognize, there is some question as to the adequacy of NRS 34.810 as a procedural bar in capital cases.  *See Valerio v. Crawford*, 306 F.3d 742, 777-78 (9ᵗʰ Cir. 2002) (*en banc*).  The Court need not reach this issue.

1    Petitioner, however, argues that the holding in *Moran* does not control the result here

2    because *Moran* predates both the burden-shifting regime set forth in *Bennett* and the Ninth Circuit's

3    approval of the use of unpublished decisions to show inconsistent application of a state procedural

4    rule.  *See Powell v. Lambert*, 357 F.3d 871, 879 (9th Cir. 2004).  Unquestionably, the manner in

5    which the adequacy issue is litigated has undergone substantial change since the Ninth Circuit

6    decided *Moran*.  Moreover, the burden-shifting mandated in *Bennett* suggests that adequacy is an

7    issue that is to be decided on a case-by-case basis.

8    Even so, a post-*Bennett* Ninth Circuit case instructs that the court's past

9    determinations as to the adequacy of a procedural rule for a given time period are to be accorded

10   deference in applying the *Bennett* analysis.  In *King v. Lamarque*, the court held as follows:

11           In *Ortiz v. Stewart*, 149 F.3d 923 (9th Cir.1998), we held that a
     petitioner had not met his burden because we had already held the state
12   procedural rule to be consistently applied and the petitioner failed to cite cases
     demonstrating *subsequent* inconsistent application. *Id*. at 932. *This holding
13   helps prevent inconsistent determinations regarding a state procedural rule's
     adequacy during a given time period*. This same reasoning provides a firm
14   foundation for applying the *Ortiz* requirement bilaterally. Once we have found
     a state procedural rule to be inadequate, petitioners may fulfill their burden
15   under *Bennett* by simply challenging the adequacy of the procedure; the
     burden then shifts back to the government to demonstrate that the law has
16   *subsequently* become adequate. . . .

17           This holding is necessary to maintain the primary principle we
     announced in *Bennett*: the government bears the ultimate burden of
18   establishing the adequacy of a rule. This burden should exist whether or not
     the petitioner identifies the correct basis upon which to challenge the adequacy
19   of the rule. If we held otherwise, the government could avoid its burden under
     *Bennett*, and illogical results would occur.  Here, for example, we would bar
20   King's claim based on a procedural rule already found to be inadequate. *In
     essence, we would be holding that the same rule is adequate in some cases
21   and inadequate in others. This defies common sense. A procedural rule is
     either adequate or inadequate during a given time period; its adequacy does
22   not depend upon the facts of a petitioner's case*.

23   *King v. Lamarque*, 464 F.3d 963, 967-68 (9th Cir. 2006) (emphasis added).  Thus, based on *King*, this

24   court defers to the Ninth Circuit's determination that, as of March 1996 (the relevant date in *Moran*),

25   the Nevada Supreme Court had consistently applied statutory timeliness bars to post-conviction

26   petitions.

34

1    Whether the Nevada Supreme Court continued to consistently apply NRS 34.726 to

2  post-conviction petitions after March 1996 remains open to contention.  Indeed, the court in both

3  *Ortiz* and *King* made clear that either the petitioner or the government, as the case may be, can

4  challenge a previous Ninth Circuit adequacy determination by showing how the state applied the rule

5  in subsequent cases.  In this regard, in *King*, the court stated:

6          Here, because we held in *Morales* that the California timeliness rule was
         insufficiently clear, the government must show on remand that the rule has since been
7          clarified for noncapital cases and that the clarified rule has since been consistently
         applied.

8

9  *King*, 464 F.3d at 967.  Similarly, in *Ortiz*, the court stated:

10         Ortiz has not pointed to any Arizona decisions after our *Poland* opinion that
         demonstrate that Arizona has become inconsistent and irregular in its reliance on
11         procedural default.

12  *Ortiz*, 149 F.3d at 932.

13         The procedural default in this case occurred between January 1, 1994,[20] and

14  March 24, 1997, the date petitioner filed the state petition ruled untimely by the Nevada Supreme

15  Court.  *See* Petitioner's Exhibit 562; *see also* Opposition to Motion to Dismiss, p. 25, lines 2-13.

16         According to petitioner, an example of the Nevada Supreme Court's inconsistent

17  application of NRS 34.726 is found in *Rippo v. State*, 146 P.3d 279, 285 (Nev. 2006), where the

18  court addressed whether a penalty phase jury instruction regarding the consideration of mitigating

19  circumstances was improper.  Petitioner notes that the Nevada Supreme Court raised the issue

20  *sua sponte* long after the time limit imposed by NRS 34.726 had passed.  In addition to the *Rippo*

21  case, petitioner cites several other instances, in both published and unpublished opinions, where the

22  Nevada Supreme Court did not use NRS 34.726 to bar claims even though application of the rule

23  appeared to be warranted.  By asserting specific factual allegations and evidence to assert the

24

25

26  _____

[20] Petitioners whose convictions became final prior to January 1, 1993, and who had timely filed a first petition, were allowed one year from the date the statute of limitations became effective, which was January 1, 1993, to file any successive petitions.  *Pellegrini v. State*, 34 P.3d 519, 529 (Nev. 2001).

1  inadequacy of NRS 34.726, petitioner has carried his modest burden under *Bennett*.  *See Bennett*,

2  322 F.3d at 586.

3          Thus, the "ultimate burden" of proving the adequacy of NRS 34.726 falls upon the

4  respondents.  *Bennett*, 322 F.3d at 585.  This court considers unpublished as well as published

5  decisions of the Nevada Supreme Court to determine whether that court had, "in actual practice, a

6  clear, consistently applied, and well-established rule at the time of [petitioner's] purported default."

7  *Powell*, 357 F.3d at 872, 879 (internal quotation marks omitted).  This examination "should be

8  limited to the language of the state court opinions" rather than "based on a *post hoc* examination of

9  the pleadings and record" in the cases reviewed.  *Bennett*, 322 F.3d at 584.  A rule need not be

10  applied in every case to be considered consistently applied; however, it must be applied in the "vast

11  majority of cases." *Dugger v. Adams*, 489 U.S. 401, 410-11 n. 6 (1989).

12          In *Bennett*, the Court of Appeals indicated that the scope of the state's "ultimate

13  burden" would depend on the nature and depth of the petitioner's allegations of inadequacy.

14  *Bennett*, 322 F.3d at 584-85 (quoting *Hooks v. Ward*, 184 F.3d 1206, 1217 (10th Cir.1999)).

15          Here, the respondents have provided explanations as to why the published and

16  unpublished opinions relied upon by petitioner do not establish that the Nevada Supreme Court has

17  been inconsistent in applying NRS 34.726.  With respect to published Nevada cases predating the

18  issuance of *Moran*, respondents correctly point out that these cases were available for consideration

19  by the Court of Appeals in *Moran*.  Therefore, the inquiry here must be directed towards Nevada

20  Supreme Court opinions issued after March 1996.

21          Respondents dispute that *Rippo* is evidence of inconsistent application by pointing out

22  that the published opinion contains neither a reference to NRS 34.726, nor any indication that

23  Rippo's petition was untimely filed.  The state petition for writ of habeas corpus in *Rippo* was, in

24  fact, filed in a timely manner.  *See Rippo*, 146 P.3d at 282.  Respondents also point out that the

25  Nevada Supreme Court expressly found "good cause" to entertain Rippo's belated claim.  The state

26  district court had already denied Rippo's petition when the Nevada Supreme Court issued its

1   decision in *McConnell v. State*, 102 P.3d 606 (Nev. 2004), giving rise to the issue in *Rippo*.  The

2   Nevada Supreme Court found good cause for Rippo to raise the *McConnell* claim on appeal, as

3   opposed to returning to the lower court, because the legal basis for the claim "was not available at

4   the time he pursued his habeas petition in the district court" and because the claim "present[ed]

5   questions of law that [did] not require factual determinations outside the record."  *Id*. at 283 (internal

6   citations omitted).

7           Petitioner's suggestion that the Nevada Supreme Court circumvented NRS 34.726 in

8   *Rippo*, by raising the jury instruction issue *sua sponte* after the one-year time limit is misleading,

9   because the issue was ancillary to the court's adjudication of Rippo's *McConnell* claim. The court's

10  subsequent opinion shows that the court sought oral argument on the issue, not as a freestanding

11  ground for relief, but because of the issue's potential impact on the court's harmless error analysis.

12  *See Rippo*, 146 P.3d at 285, 287-88.  The Nevada Supreme Court in *Rippo* did not arbitrarily

13  overlook statutory default rules, as petitioner claims.  Rather, the court  merely solicited oral

14  argument on an aspect of a broader habeas claim – the *McConnell* claim – that had been raised in a

15  manner consistent with Nevada law.

16          Of the several other Nevada Supreme Court opinions that petitioner cites to support

17  his claim that the Nevada Supreme Court is inconsistent in applying NRS 34.726, only *Bejarano v.

18  Warden*, 929 P.2d 922 (Nev. 1996) and *Hill v. State*, 953 P.2d 1077 (Nev. 1998) were issued after

19  the Ninth Circuit Court of Appeals decided *Moran*.

20          In *Bejarano,* the Nevada Supreme Court expressly addressed whether Bejarano's

21  default should be excused based on cause and prejudice.  Moreover, the court concluded that Bejarano

22  had, in fact, failed to meet his burden under the cause and prejudice exception.  *Bejarano*, 929 P.2d at

23  926.  While the court briefly addressed, in a footnote, Bejarano's claim that his direct appeal counsel

24  was ineffective, the court clearly upheld the lower court's rejection of Bejarano's

25  state petition on procedural grounds.  *Id*. As such, *Bejarano* does not show that the Nevada Supreme

26

1    Court disregards procedural bars.  *See Loveland v. Hatcher*, 231 F.3d 640, 643-44 (9th Cir.2000);

2    *Moran*, 80 F.3d at 1269.

3            In *Hill*, the Nevada Supreme Court addressed a claim on the merits that was not raised

4    in the lower court.  *Hill*, 953 P.2d at 1084.  Making no reference to the timeliness of the claim, the

5    state supreme court reasoned that "because this issue raises a claim of constitutional dimension

6    which, if true, might invalidate Hill's death sentence and 'the record is sufficiently developed to

7    provide an adequate basis for review,' we will address it."  *Id.* (citation omitted).  This court notes

8    that, although Hill apparently raised the claim on appeal more than one year after his conviction

9    became final, his petition in the lower state court was timely filed.  *Id.* at 1081.  Under those

10   circumstances, the Nevada Supreme Court's failure to apply NRS 34.726 to the lone claim does little

11   to undermine the adequacy the rule.

12           As for the unpublished opinions relied upon by petitioner (*see* Petitioner's Exhibits

13   101-49), respondents provide explanations, showing, with respect to the vast majority of them, that

14   there was no limitations bar or that, if there was, the Nevada Supreme Court did, in fact, enforce the

15   procedural bar to deny the petitioner's post-conviction claims.  Reply in Support of Motion to

16   Dismiss, pp. 9-13.

17           In several of the unpublished opinions – *e.g. Farmer v. State*, Case No. 29120

18   (Petitioner's Exhibit 111); *Nevius v. Warden*, Case Nos. 29027, 29028 (Petitioner's Exhibit 127);

19   *Riley v. State*, Case No. 33750 (Petitioner's Exhibit 136); *Sechrest v. State*, Case No. 29170

20   (Petitioner's Exhibit 139); *Williams v. Warden*, Case No. 29084 (Petitioner's Exhibit 144) – the court

21   did not invoke NRS 34.726, but relied on other procedural bars.  While the Nevada Supreme Court

22   may have been able to apply NRS 34.726 in those cases, the state supreme court's failure to impose

23   all applicable procedure bars does not undermine the adequacy of the ones not imposed.  Respondents

24   point to the Nevada Supreme Court's discussion of this issue in *State v. Dist. Ct. (Riker)*, 112 P.3d

25   1070 (Nev. 2005):

26

1
2
3
4

> . . . A court need not discuss or decide every potential basis for its decision as long as one ground sufficient for the decision exists. This proposition is fundamental to legal analysis and judicial economy, as well as simple logic. Thus, our conclusion in a case that one procedural bar precludes relief carries no implication regarding the potential applicability of other procedural bars.

5   *Riker*, 112 P.3d at 1079 (internal citations omitted).  Although not controlling here, the state court's

6   reasoning is sound.  Accordingly, this Court concludes that the Nevada Supreme Court's opinions in

7   such cases do not undermine the State's ability to demonstrate that NRS 34.726 is an adequate

8   procedural bar in this case.

9   In other unpublished opinions submitted by petitioner – *e.g. Jones v. McDaniel*,

10  Case No. 39091 (Petitioner's Exhibit 117); *Milligan v. Warden*, Case No. 37845 (Petitioner's

11  Exhibit 123); *O'Neill v. State*, Case No. 39143 (Petitioner's Exhibit 130) – the Nevada Supreme

12  Court applied NRS 34.726, but also discussed the merits of the petitioner's claims.  However, in those

13  cases, the court's discussion of the merits of the petitioner's claims was limited to addressing whether

14  the default could be excused due to "cause and prejudice" or a "fundamental miscarriage of justice."

15  Thus, rather than show inconsistent application of NRS 34.726, such cases demonstrate just the

16  opposite.

17  In one unpublished opinion, it appears that the Nevada Supreme Court did disregard a

18  procedural rule (but not NRS 34.726) to reach the merits of the petitioner's claim.  In an order

19  denying rehearing, the court ruled on a cruel and unusual punishment claim raised for the first time in

20  petitioner's request for rehearing.  *Nevius v. Warden*, Case Nos. 29027, 29028 (Petitioner's Exhibit

21  128).  The court noted that the Nevada Rules of Appellate Procedure barred such a claim, but, "in the

22  interest of judicial economy," addressed the merits of the claim rather than remand it to the lower

23  court.  This minor deviation in the application of procedural rules does not impact the adequacy of

24  NRS 34.726 for purposes of this case.  *See Dugger*, *supra*.

25  In addition to arguing that the opinions relied upon by petitioner do not establish

26  inconsistent application of  NRS 34.726, respondents point to Ninth Circuit jurisprudence regarding

1    that statute.  Respondents cite *Collier v. Bayer*, 408 F.3d 1279, 1285 (9th Cir. 2005); *High v. Ignacio*,

2    408 F.3d 585, 590 (9th Cir. 2005); *Valerio v. Crawford*, 306 F.3d 742, 778 (9th Cir. 2002); *Loveland*,

3    *supra*; and *Moran*, *supra*.  None of these cases squarely addresses the adequacy of NRS 34.726 for

4    any period after March 1996.  Even so, all five mention or affirm the Nevada Supreme Court's

5    consistent application of the state's timeliness bars.

6            Respondents go on to list 276 unpublished opinions and 25 published opinions in

7    which the Nevada Supreme Court has applied NRS 34.726.  *See* Appendices A and B to Reply in

8    Support of Motion to Dismiss.  All of the unpublished opinions, and many of the published opinions

9    submitted by respondents postdate the Court of Appeals' 2004 *Powell* decision, and also postdate the

10   procedural default in this case.[21]  There is, however, nothing to suggest that the Nevada Supreme

11   Court was less consistent in applying the bar prior to 2004.  The Nevada Supreme Court opinions

12   listed by respondents show the frequency and regularity with which the Nevada Supreme Court

13   applies NRS 34.726.

14           Based on the foregoing, this Court concludes that, during the time period in question

15   – January 1, 1994, to March 24, 1997 – the Nevada Supreme Court consistently applied NRS 34.726

16   to untimely petitions.  NRS 34.726 is therefore adequate to function as a procedural default.

17           Petitioner does not assert that there is cause and prejudice, to overcome the procedural

18   default, and he does not make an argument that application of the procedural default will result in a

19   fundamental miscarriage of justice.

20           Consequently, the Court finds that the following claims in petitioner's second

21   amended petition are procedurally defaulted, and subject to dismissal:  Grounds 12, 14, 15, 16, 17, 18,

22   22, 25, 26, 27, 28, 29, and 32.[22]

23

24           [21] According to respondents, the Nevada Attorney General's office began collecting unpublished
25   cases citing NRS 34.726 as a result of the holding in *Powell* that unpublished cases are relevant to
     determining the adequacy of a procedural bar.

26           [22] In addition, Ground 29 is not cognizable in this federal habeas corpus action.  *See* Discussion,
     *infra*, Part C.

1    C.    Cognizability of Ground 29

2         Next, respondents argue in their motion to dismiss that Ground 29 is not cognizable in

3    this federal habeas corpus action.  Motion to Dismiss, pp. 9-10.  Petitioner did not respond to this

4    argument.

5         Ground 29 is petitioner's claim that he "was denied his state and federal constitutional

6    right to the effective assistance of state post-conviction counsel."  Second Amended Petition,

7    pp. 226-30.  Essentially, petitioner claims, in Ground 29, that his state post-conviction counsel failed

8    to conduct an adequate investigation.  *Id*.

9         As respondents point out, 28 U.S.C. §2254(i) states: "The ineffectiveness or

10   incompetence of counsel during Federal or State collateral post-conviction proceedings shall not be a

11   ground for relief in a proceeding arising under section 2254."  Moreover, the Supreme Court has held

12   that the federal constitutional right to effective assistance of counsel does not apply on state collateral

13   proceedings.  *See Coleman v. Thompson*, 501 U.S. 722, 752 (1991) ("There is no constitutional right

14   to an attorney in state post-conviction proceedings." (citing *Pennsylvania v. Finley*, 481 U.S. 551

15   (1987) and *Murray v. Giarratano*, 492 U.S. 1 (1989))).

16        Ground 29 is not cognizable in this federal habeas action.  This is further reason for the

17   dismissal of Ground 29.[23]

18   D.    Ripeness of Grounds 7 and 30

19        Respondents next argue that Ground 30 is not ripe.  Motion to Dismiss, p. 10.

20   Petitioner did not respond to this argument.

21        In Ground 30, petitioner claims that, because he is mentally ill, his execution would

22   violate the constitutional ban on cruel and unusual punishment.  Second Amended Petition,

23   pp. 231-32.

24        Respondents' position is supported by *Martinez-Villareal v. Stewart*, 118 F.3d 628,

25   634 (9th Cir. 1997), *aff'd*, 523 U.S. 637 (1998), wherein the Ninth Circuit Court of Appeals stated:

26   ――――――――――――――――――――――

     [23] Ground 29 is also procedurally defaulted.  *See* Discussion, *supra*, Part B.

1    "[A] competency claim must be raised in a first habeas petition, whereupon it also must be dismissed

2    as premature due to the automatic stay that issues when a first petition is filed."  The court held that, if

3    again presented to the district court once the claim becomes ripe for review, it shall not be treated as a

4    second or successive petition.  *See id.* at 643-44.  Ground 30 shall, therefore, be dismissed without

5    prejudice as premature.[24]

6           E.      Exhaustion

7           Respondents argue that the following of petitioner's claims have not been exhausted in

8    state court: Grounds 1, 2, 4, 7, 8, 21, 30, 31, 33, 34, 35, and 36.  Also, respondents argue that portions

9    of Grounds 5 and 6 are unexhausted.

10          A federal court may not grant relief on a habeas corpus claim not exhausted in state

11   court.  28 U.S.C. § 2254(b).  The exhaustion doctrine is based on the policy of federal-state comity,

12   and is designed to give state courts the initial opportunity to correct alleged constitutional

13   deprivations.  *See Picard v. Conner*, 404 U.S. 270, 275 (1971).

14          To exhaust a claim, a petitioner must fairly present that claim to the State's highest

15   court, and must give that court the opportunity to address and resolve it.  *See Duncan v. Henry*,

16    513 U.S. 364, 365 (1995)(*per curiam*); *Keeney v. Tamayo-Reyes*, 504 U.S. 1, 10 (1992).  The "fair

17   presentation" requirement is satisfied when the claim has been presented to the highest state court

18   by describing the operative facts and the legal theory upon which the federal claim is based.

19   *See Anderson v. Harless*, 459 U.S. 4, 6 (1982); *Batchelor v. Cupp*, 693 F.2d 859, 862 (9th Cir. 1982),

20   *cert. denied*, 463 U.S. 1212 (1983).  To fairly present a federal constitutional claim to the state court,

21   the petitioner must alert the court to the fact that he asserts a claim under the United States

22   Constitution.  *Hiivala v. Wood*, 195 F.3d 1098, 1106 (9th Cir. 1999), *cert. denied*, 529 U.S. 1009

23   (2000), *citing Duncan*, 513 U.S. at 365-66.

24

25

26
_____

[24] Ground 30 is also unexhausted.  *See* Discussion, *infra*, Part E.

1        Ground 1

2        Ground 1 is petitioner's claim that he was denied his constitutional right to a fair trial

3   before an impartial tribunal and jury, because of the presence of members of an organization known

4   as "Posse Comitatus" on the jury and in the courtroom.  Second Amended Petition (docket #77),

5   pp. 37-63.

6        Petitioner argues that Ground 1 was exhausted in state court on his direct appeal.

7   *See* Opposition to Motion to Dismiss, p. 32.  On the direct appeal, petitioner made an argument that

8   the trial court erred in not granting defendant's motion to change venue.  *See* Appellant's Opening

9   Brief, Petitioner's Exhibit 553, pp. 8-10.  The entire substance of petitioner's argument, in his

10  opening brief on appeal, was as follows:

11              A defendant is entitled to have a panel of impartial jurors.  *Murphy v.
            Florida*, 421 U.S. 794 (1975).  This court has recognized this fact in *Kaplan v.
12          State*, 96 Nev. 708, 618 P.2d 354 (1980).  While it is true that the mere holding
            of a preconceived notion as to the guilt or innocence of the accused, without
13          more, is insufficient to justify a change of venue, such a change is mandated
            where it appears that the accused cannot receive a fair trial.  *Irvin v. Dowd*, 366
14          U.S. 717 (1961).

15              Further, it has been held that where the pretrial publicity is so
            outrageous as to utterly corrupt the trial atmosphere, a change of venue is in
16          order.  *Sheppard v. Maxwell*, 384 U.S. 333 (1966); *Kaplan v. State*, *supra*.  In
            the instant case, the affidavit of counsel for the accused stated:

17
                "Your affiant had been informed by the editor/publisher
18              of the local newspaper, the <u>Lovelock Review-Miner</u>, that she
                and other members of the community had seen the defendant
19              within the community prior to December 1980, fighting in bars,
                breaking cue sticks in fits of rage, and loitering in mining camp
20              areas.

21              ...

22                  Your affiant has been approached by this same
                editor/publisher who is on the jury venire who admitted her
23              prejudice and asked for a stipulation that she be removed from
                the jury.  If the newspaper is biased, then the members of the
24              community who read the newspaper will reflect that bias."

25

26

43

> It is submitted that a review of the jury selection process in this case will reveal that the appellant did not receive a fair trial. Given the rural nature of Pershing County and its small population, it would be impossible for an outside "hippie type" to receive a fair and impartial trial concerning the murder of local citizens. The court should have transferred venue.

*Id.* at 9-10. On his direct appeal, petitioner also argued that the trial court erred in not sequestering the jury. *Id.* at 10-12; Petitioner's Exhibit 554, pp. 2-4. That argument was also based largely on alleged pretrial publicity regarding the case, and on the alleged contact between trial counsel and the newspaper publisher. In the jury-sequestration argument, petitioner also referred to the rural nature of the community, the general attitudes – "the 'lynch-mob' mentality" – of the local residents regarding crime and punishment, and apparently mistaken beliefs on the part of some local residents that petitioner had been in the area causing trouble for some time. *See* Petitioner's Exhibit 554, pp. 2-4.[25]

Comparing the claims that petitioner made on his direct appeal to Ground 1 in this case, the Court concludes that Ground 1 is unexhausted.[26] The myriad additional allegations in Ground 1, and, in particular, the allegations regarding the effect of "Posse Comitatus" members on the jury and in the courtroom, render Ground 1 fundamentally different from the claims made on petitioner's appeal.

Ground 2

Ground 2 is petitioner's claim that he was denied his constitutional rights to due process of law, equal protection under the laws, a fair tribunal, and a reliable sentence, because of "compensatory bias" on the part of the trial judge. Second Amended Petition, pp. 64-71. Essentially, petitioner asserts that the trial judge was, at the time of trial, under investigation for corruption, and knew he was, and, therefore, was inclined to favor the prosecution in an attempt to conceal his corrupt activity. *Id.*

---

[25] These claims are reiterated in Grounds 9 and 10 in this case. Grounds 9 and 10 are exhausted, and survive respondents' motion to dismiss.

[26] Ground 1 is also barred by the statute of limitations. *See* Discussion, *supra*, Part A.

1    Petitioner argues, in response to the motion to dismiss, that the claim in Ground 2 was

2    presented to the Nevada Supreme Court as Ground 11 of his opening brief, on the appeal in his

3    third state habeas action.  *See* Opposition to Motion to Dismiss, p. 41; Petitioner's Exhibit 563

4    (opening brief before Nevada Supreme Court).  In Ground 11 of his opening brief before the Nevada

5    Supreme Court, petitioner argued that "the trial court improperly cross-examined defense expert

6    Dr. Richnak and engaged in other improper, prejudicial commentary and examination."  Petitioner's

7    Exhibit 563, pp. 47-60.  Much of the argument in that claim in state court focused on the trial judge's

8    questions to witnesses, and his comments regarding various evidentiary issues.  *Id*.  In addition,

9    petitioner pointed out in his claim in state court that the judge congratulated the jury after the jury

10   returned its guilty verdicts.  *Id*. at 57.  Petitioner argued in state court that the judge's conduct aided

11   the prosecution, prejudiced the defense, and gave the appearance that the judge was in agreement with

12   the prosecution.  *Id*. at 58-59.  Petitioner argued that "[t]he record undeniably establishes that [the

13   judge's] conduct was partisan and actually aided the prosecution and impeached the defense."  *Id*. at

14   58.

15   Comparing the claims that petitioner made on his direct appeal to Ground 2 in this

16   case, the Court concludes that Ground 2 is unexhausted.[27]  The myriad additional allegations in

17   Ground 2, and, in particular, the allegations regarding the alleged corruption investigation of the trial

18   judge,  and its alleged effect upon the impartiality of the judge, render Ground 2 fundamentally

19   different from the claims made by petitioner on the appeal in his third state habeas case.

20   Ground 4

21   Ground 4 is petitioner's claim that he was denied a fair trial because the trial court

22   failed to halt his trial when questions arose regarding his competence.  Second Amended Petition,

23   pp. 98-104.  In his second amended petition, petitioner concedes that Ground 4 has not been

24

25

26

[27] Ground 2 is also barred by the statute of limitations.  *See* Discussion, *supra*, Part A.

1   presented to the Nevada Supreme Court for review.  *Id.* at p. 22, lines 26-27.  Ground 4 is, therefore,

2   unexhausted.[28]

3           Ground 5

4           In Ground 5, petitioner claims that, in violation of his constitutional right to effective

5   assistance of counsel, his trial counsel rendered ineffective assistance, "by not investigating his

6   mental health, or consulting with mental health experts, including but not limited to, Dr. Gutride's

7   reports and possible testimony, because the state offered false and misleading testimony from

8   Dr. Gutride, or because the state withheld and suppressed material evidence in the Lakes Crossing

9   Progress Notes."  Second Amended Petition, pp. 105-117.  This claim focuses on petitioner's

10  allegation that his counsel failed to adequately prepare for the testimony of Dr. Gutride, a

11  psychologist who was called to the witness stand by the prosecution, and who testified about

12  petitioner's mental health.

13          Respondents assert, with no supporting analysis, that Ground 5 is partially

14  unexhausted.  *See* Motion to Dismiss, p. 14; Reply in Support of Motion to Dismiss, pp. 19,

15  lines 25-26.

16          Petitioner argues that he exhausted Ground 5 by presenting that claim to the Nevada

17  Supreme Court as Ground B in his opening brief on the appeal in his first state habeas action.  *See*

18  Opposition to Motion to Dismiss, p. 42; Petitioner's Exhibit 533 (opening brief).  In Ground B in the

19  state-court appeal, petitioner generally took issue with his counsel's failure to adequately investigate

20  his alleged mental illness.

21          While Ground B in the state-court appeal did not specifically mention the testimony of

22  Dr. Gutride, the Court finds that the new specific allegations in Ground 5 do not fundamentally

23  change the nature of this claim.  Rather, the new allegations that appear in the federal petition only

24  specify the details of counsel's alleged failure to adequately investigate his alleged mental illness.

25  Ground 5 is exhausted.

26  ──────────────

[28]  Ground 4 is also barred by the statute of limitations.  *See* Discussion, *supra*, Part A.

1          Ground 6

2                  In Ground 6, petitioner claims that, in violation of his constitutional right to effective

3   assistance of counsel, his trial counsel rendered ineffective assistance, because the trial court denied

4   counsel an opportunity to investigate his background, and because his counsel failed to adequately

5   perform such an investigation.  Second Amended Petition, pp. 118-68.

6                  Respondents assert, with no supporting analysis, that Ground 6 is partially

7   unexhausted.  *See* Motion to Dismiss, p. 14.

8                  Petitioner argues that he exhausted Ground 6 by presenting that claim to the Nevada

9   Supreme Court on his direct appeal (*see* Petitioner's Exhibit 553, pp. 56-58), and on the appeal in his

10  first state habeas proceeding (*see* Petitioner's Exhibit 533, pp. 8-17).

11                 While in Ground 6 petitioner certainly presents more specific allegations than he did in

12  his claims in state court, the Court finds that the new specific allegations do not fundamentally change

13  the nature of this claim.  Rather, the new allegations in the federal petition only specify the details of

14  counsel's alleged failures to adequately investigate his background.  Ground 6 is exhausted.

15         Ground 7

16                 In Ground 7, petitioner claims that, because he is mentally ill, his execution would

17  violate the constitutional ban on cruel and unusual punishment.  Second Amended Petition,

18  pp. 169-72.  As the Court understands this claim, petitioner focuses on the effect of petitioner's

19  alleged mental illness at the penalty phase of his trial.  *See id.*  In his second amended petition,

20  petitioner concedes that Ground 7 has not been presented to the Nevada Supreme Court for review.

21  *Id.* at p. 22, lines 26-27.  Ground 7 is, therefore, unexhausted.

22         Ground 8

23                 In Ground 8, petitioner claims that he was denied effective assistance of his trial

24  counsel, in violation of his constitutional rights, because his counsel failed to conduct an adequate

25  investigation of the facts surrounding the murders.  Second Amended Petition, pp. 173-75.

26  Specifically, in Ground 8, petitioner focuses on his counsel's alleged failure to investigate potential

1    evidence regarding how he came to be at the residence where the murders occurred, and about his

2    possible previous familiarity with that residence and with the victims.  *Id*.  In his second amended

3    petition, petitioner concedes that Ground 8 has not been presented to the Nevada Supreme Court for

4    review.  *Id*. at p. 22, lines 26-27.  Ground 8 is, therefore, unexhausted.[29]

5                   Grounds 20 and 21

6                   In Ground 20, petitioner claims that his constitutional rights were violated because the

7    State knowingly offered false and misleading testimony in aggravation.  Second Amended Petition,

8    pp. 200-03.  In addition, petitioner claims in Ground 20 that his constitutional rights were violated by

9    the trial court's failure to withdraw the death sentence based on this alleged unreliable evidence, and

10   that his trial counsel was ineffective in failing to challenge this alleged unreliable evidence.  *Id*.

11                  In Ground 21, petitioner claims that his constitutional rights were violated because the

12   jury considered materially inaccurate evidence at the penalty phase of his trial.  Second Amended

13   Petition, pp. 204-08.  In addition, petitioner claims in Ground 21 that his trial counsel was ineffective

14   for failing to investigate the alleged materially inaccurate evidence.  *Id*.

15                  The subject of Grounds 20 and 21 is one of the alleged prior convictions that the

16   prosecution offered at the penalty hearing as an aggravating factor; petitioner claims that it was, in

17   fact, not a valid conviction under the law of Ohio, where the purported conviction occurred.

18                  Respondents assert, with no supporting analysis, that Ground 21 is unexhausted.

19   *See* Motion to Dismiss, p. 14; Reply in Support of Motion to Dismiss, p. 19, lines 25-26.[30]  Petitioner

20   points to Ground B in his opening brief before the Nevada Supreme Court on the appeal in his first

21   state habeas action, arguing that he there exhausted the claims regarding his purported Ohio felony

22   conviction.  *See* Opposition to Motion to Dismiss, pp. 41-42; *see also* Petitioner's Exhibit 533, pp.

23   8-17.  The Court agrees that in Ground B, in his 1987 brief, petitioner did fairly present the Nevada

24   _____

25         [29]  Ground 8 is also barred by the statute of limitations.  *See* Discussion, *supra*, Part A.

26         [30]   Because Ground 20 is so closely related to Ground 21, the Court here considers the question
     of the exhaustion of Ground 20, as well.

1    Supreme Court with the claims of ineffective assistance of counsel now asserted in Grounds 20 and

2    21.  Petitioner did, in that brief, argue that his trial counsel was ineffective for not adequately

3    investigating his background in Ohio.  *See*  Exhibit 533, pp. 8-17.   That argument must be considered

4    to have encompassed petitioner's position that his counsel was ineffective for not fully investigating

5    his purported felony convictions in Ohio.

6            To the extent that petitioner asserts claims in Grounds 20 and 21 other than ineffective

7    assistance of counsel claims, the Court finds such claims exhausted in state court, on petitioner's

8    direct appeal, pursuant to NRS 177.055.  Under that statute, in capital cases, the Nevada Supreme

9    Court automatically is charged with reviewing the record to determine, among other things,

10   "[w]hether the evidence supports the finding of an aggravating circumstance or circumstances."

11   NRS 177.055(2)(c).

12           Even if a petitioner does not specifically raise a constitutional claim in state court, the

13   exhaustion requirement is satisfied if the state appellate court is required, by state law, to review the

14   record for the sort of error claimed in the federal habeas petition.  *See Comer v. Schriro*, 480 F.3d

15   960, 981 (9th Cir.), *cert. denied*, 127 S.Ct. 2455 (2007).  When that is so, the state court's *sua sponte*

16   determination that there was no error constitutes sufficient state consideration of the claim, impliedly

17   exhausting the claim.  *Id*., citing *Ake v. Oklahoma*, 470 U.S. 68, 74-75 (1985), and *Beam v. Paskett*,

18   3 F.3d 1301, 1306-07 (9th Cir.1993), overruled on other grounds by *Lambright v. Stewart*, 191 F.3d

19   1181, 1185 (9th Cir.1999).  A state court's automatic review does not necessarily exhaust all federal

20   constitutional claims; rather, only those claims that the state court is specifically required to review

21   are exhausted on the merits by the automatic review.  *See Comer*, 480 F.3d at 981; *Poland v. Stewart*,

22   117 F.3d 1094, 1105-06 (9th Cir.1997).

23           In this case, the Nevada Supreme Court's automatic review, pursuant to

24   NRS 177.055(2)(c), encompassed petitioner's claims that one of the aggravating factors supporting

25   his death sentence was based on materially inaccurate evidence.

26           Grounds 20 and 21 are exhausted.

49

1

2          Ground 30

3          In Ground 30, petitioner claims that, because he is mentally ill, his execution would

violate the constitutional ban on cruel and unusual punishment.  Second Amended Petition,

pp. 231-32.  In Ground 30, petitioner alleges that petitioner would be unable to comprehend the

connection between the offenses for which he was sentenced to death and his execution.  *Id*.  In his

second amended petition, petitioner concedes that Ground 30 has not been presented to the Nevada

Supreme Court for review.  *Id*. at p. 22, lines 26-27.  Ground 30 is, therefore, unexhausted.[31]

8          Ground 31

9          In Ground 31, petitioner claims that he was denied his constitutional rights "due to the

failure of the Nevada Supreme Court to conduct fair and adequate appellate review."  Second

Amended Petition, pp. 233-36.  Petitioner claims that the Nevada Supreme Court did not adequately

conduct the mandatory review of his conviction and sentence mandated by NRS 177.055(2).  *Id*.

13          Respondents argue that Ground 31 is unexhausted.  Motion to Dismiss, p. 14.

14          Petitioner did not respond, in his opposition to the motion to dismiss, to the assertion

that Ground 31 is unexhausted.  *See* Opposition to Motion to Dismiss, pp. 31-43.

16          In his second amended petition, petitioner asserts that Ground 31 "should be deemed

presented to the Nevada Supreme Court pursuant to its mandatory review under Nev. Rev. Stat.

§ 177.055."  Second Amended Petition, p. 22, lines 21-23.  That argument is clearly without merit,

however.  NRS 177.055 does not provide for automatic review of the issue whether or not the

Supreme Court's review under NRS 177.055 is constitutionally adequate.

21          The Court sees no indication that the claim in Ground 31 has ever been presented to

the Nevada Supreme Court.  Ground 31 is unexhausted.[32]

23

24

25   _____

26          [31] In addition, Ground 30 is not ripe.  *See* Discussion, *supra*, Part D.

             [32] Ground 31 is also barred by the statute of limitations.  *See* Discussion, *supra*, Part A.

50

Ground 33

In Ground 33, petitioner claims that his conviction and sentence are unconstitutional because his "capital trial and sentencing and review on direct appeal were conducted before state judicial officers whose tenure in office was not during good behavior but whose tenure was dependent on popular election."  Second Amended Petition, pp. 251-52.  In his second amended petition, petitioner concedes that Ground 33 has not been presented to the Nevada Supreme Court for review. *Id*. at p. 22, lines 26-27.  Ground 33 is, therefore, unexhausted.[33]

Ground 34

In Ground 34, petitioner claims that his death sentence is unconstitutional "due to the restrictive conditions on Nevada's death row."  Second Amended Petition, pp. 253-54.  In his second amended petition, petitioner concedes that Ground 34 has not been presented to the Nevada Supreme Court for review.  *Id*. at p. 22, lines 26-27.  Ground 34 is, therefore, unexhausted.[34]

Ground 35

In Ground 35, petitioner claims that his death sentence is unconstitutional "because of the risk that the irreparable punishment of execution will be applied to innocent persons."  Second Amended Petition, pp. 255-56.  In his second amended petition, petitioner concedes that Ground 35 has not been presented to the Nevada Supreme Court for review.  *Id*. at p. 22, lines 26-27.  Ground 35 is, therefore, unexhausted.[35]

Ground 36

In Ground 36, petitioner claims that his death sentence is unconstitutional "because the Nevada capital punishment system operates in an arbitrary and capricious manner."  Second Amended Petition, pp. 257-60.  In Ground 36, petitioner focuses on the breadth of the statutory aggravating circumstances in Nevada's death penalty statutes, and asserts that those aggravating circumstances are

---

[33] Ground 33 is also barred by the statute of limitations.  *See* Discussion, *supra*, Part A.

[34] Ground 34 is also barred by the statute of limitations.  *See* Discussion, *supra*, Part A.

[35] Ground 35 is also barred by the statute of limitations.  *See* Discussion, *supra*, Part A.

so broad that the death penalty is effectively permitted in Nevada for all first degree murders. *Id*. Petitioner also asserts in this claim that, in Nevada, capital punishment is imposed disproportionately on racial minorities. *Id*. In his second amended petition, petitioner concedes that Ground 36 has not been presented to the Nevada Supreme Court for review. *Id*. at p. 22, lines 26-27. Ground 36 is, therefore, unexhausted.[36]

<u>Treatment of Unexhausted Claims</u>

In summary, the Court finds the following claims in petitioner's Second Amended Petition to be unexhausted in state court: Grounds 1, 2, 4, 7, 8, 30, 31, 33, 34, 35, and 36.[37]

Petitioner requests that the Court stay this action, pursuant to *Rhines v. Weber*, 544 U.S. 269 (2005), to allow him to return to state court to exhaust his unexhausted claims. *See* Opposition to Motion to Dismiss, pp. 42-43.

In *Rhines*, the Supreme Court placed limitations upon the discretion of this Court to impose a stay to facilitate a habeas petitioner's return to state court to exhaust claims. The *Rhines* Court stated:

> [S]tay and abeyance should be available only in limited circumstances. Because granting a stay effectively excuses a petitioner's failure to present his claims first to the state courts, stay and abeyance is only appropriate when the district court determines there was good cause for the petitioner's failure to exhaust his claims first in state court. Moreover, even if a petitioner had good cause for that failure, the district court would abuse its discretion if it were to grant him a stay when his unexhausted claims are plainly meritless. *Cf.* 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State").

\* \* \*

---

[36] Ground 36 is also barred by the statute of limitations. *See* Discussion, *supra*, Part A.

[37] In his second amended petition, petitioner stated that the claims in Grounds 32 and 37 have not been presented to the Nevada Supreme Court. However, respondents, in their motion to dismiss, state that they disagree with petitioner in that regard, and that they believe that Grounds 32 and 37 are exhausted. *See* Motion to Dismiss, p. 14, footnote 8; Reply in Support of Motion to Dismiss, p. 15, lines 10-13. At any rate, Grounds 30 and 37 both must be dismissed for other reasons: Ground 32 is procedurally defaulted (*see* Discussion*, supra*, Part B) and Ground 37 is barred by the statute of limitations (*see* Discussion, *supra*, Part A).

> [I]t likely would be an abuse of discretion for a district court to deny a
> stay and to dismiss a mixed petition if the petitioner had good cause for
> his failure to exhaust, his unexhausted claims are potentially
> meritorious, and there is no indication that the petitioner engaged in
> intentionally dilatory litigation tactics.  In such circumstances, the
> district court should stay, rather than dismiss, the mixed petition.

*Rhines*, 544 U.S. at 277-78.  Petitioner does not qualify, under *Rhines*, for a stay.

All but one of petitioner's unexhausted claims are subject to dismissal on other grounds.  Grounds 1, 2, 4, 8, 31, 33, 34, 35, and 36 are barred by the statute of limitations, and Ground 30 is not yet ripe.  Because those claims are subject to dismissal, they are not potentially meritorious, and, under the *Rhines* decision, a stay is not warranted for their exhaustion in state court.

The Court finds Ground 7 to be unexhausted as well.  Ground 7 does not appear to be subject to dismissal on any other basis.

The Court finds that petitioner has not made a showing that a stay is warranted, under *Rhines,* to allow petitioner to return to state court to exhaust the claim in Ground 7.  To the extent Ground 7 differs from Ground 30, and asserts that petitioner's execution would violate the Eighth Amendment because of the effect of petitioner's alleged mental illness on the penalty phase of his trial, the claim appears to be unsupported by any United States Supreme Court precedent; there appears to be little or no chance of success on this claim under 28 U.S.C. § 2254(d).  Moreover, the Court finds that petitioner has made no showing of good cause for his failure to exhaust this claim in state court, in the course of his three state habeas actions, over the last two decades.  The Court will decline to stay this action to facilitate petitioner's exhaustion of Ground 7.

The *Rhines* decision includes clear instruction regarding the treatment of unexhausted claims where a stay is not warranted:

> ... [I]f a petitioner presents a district court with a mixed petition and the court
> determines that stay and abeyance is inappropriate, the court should allow the
> petitioner to delete the unexhausted claims and to proceed with the exhausted
> claims if dismissal of the entire petition would unreasonably impair the
> petitioner's right to obtain federal relief.  *See* [*Lundy*], at 520, 102 S.Ct. 1198

1   (plurality opinion) ("[A petitioner] can always amend the petition to delete the
2   unexhausted claims, rather than returning to state court to exhaust all of his
    claims").

3   *Rhines*, 544 U.S. at 278.

4           Therefore, the Court will provide petitioner with an opportunity to abandon Ground 7.

5   If petitioner abandons Ground 7, this case will proceed on the claims remaining in the second

6   amended petition (Grounds 3, 5, 6, 9, 10, 11, 13, 19, 20, 21, 23, 24, and 38).  If petitioner does not

7   abandon Ground 7, petitioner's entire second amended petition will be dismissed pursuant to *Rose v.*

8   *Lundy*, 455 U.S. 509 (1982).

9   The Discovery Motion

10          In his Motion for Leave to Conduct Discovery (docket #84), petitioner requests leave

11  of court to conduct discovery to obtain from various government entities materials that he believes

12  might support his claims in Grounds 1 and 2 of his second amended petition.

13          In Ground 1, petitioner claims that he was denied his constitutional right to a fair trial

14  before an impartial tribunal and jury, because of the presence of members of an organization known

15  as "Posse Comitatus" on the jury and in the courtroom.  Second Amended Petition (docket #77),

16  pp. 37-63.  In Ground 2, petitioner claims that he was denied his constitutional rights to due process

17  of law, equal protection under the laws, a fair tribunal, and a reliable sentence, because of

18  "compensatory bias" on the part of the trial judge.  *Id*. at 64-71.

19          A scheduling order entered in this case on April 22, 2003, ordered that any motion for

20  leave to conduct discovery was to be filed within 90 days, or by July 21, 2003.  Second Scheduling

21  Order, entered April 22, 2003 (docket #17).  The time for the filing of a discovery motion was

22  subsequently extended, by stipulation, to September 2, 2003. Stipulation and Order, entered

23  August 20, 2003 (docket #20).  In a Status Report filed by petitioner on August 29, 2003, petitioner

24  informed the Court that "all outstanding discovery issues have been resolved without this Court's

25  intervention."  Report on Status of Proceedings, filed August 29, 2003 (docket #21).  Petitioner did

26  not file a motion for leave to conduct discovery before the August 20, 2003 deadline.  In fact, the

discovery motion now before the Court was filed nearly four years beyond the due date for such

motions.  In the discovery motion, petitioner makes no mention at all of the August 20, 2003 due date.

 Petitioner makes no showing of any reason why this motion could not have been made earlier, within

the time allotted for such motions by the scheduling order.

Moreover, the Court has considered the substance of petitioner's discovery motion,

and determines that petitioner has not shown good cause for the discovery he seeks, because the

claims on which he wishes to conduct discovery (Grounds 1 and 2) are unexhausted and barred by the

statute of limitations (*see* Discussion, *supra*, Parts A and E).

Rule 6 of the Rules Governing Section 2254 Cases in the United States District Courts

states: "A party shall be entitled to invoke the processes of discovery available under the Federal

Rules of Civil Procedure if, and to the extent that, the judge in the exercise of his discretion and for

good cause shown grants leave to do so, but not otherwise."  The Supreme Court has instructed that if

through "specific allegations before the court," the petitioner can "show reason to believe that the

petitioner may, if the facts are fully developed, be able to demonstrate that he is ... entitled to relief,

it is the duty of the court to provide the necessary facilities and procedures for an adequate inquiry."

*Bracy v. Gramley*, 520 U.S. 899, 908-09 (1997) (*quoting Harris v. Nelson*, 394 U.S. 286,  300

(1969)).

Grounds 1 and 2 are barred by the statute of limitations, and are also unexhausted in

state court.  Therefore, there is no reason to believe that petitioner may, if the facts are fully

developed, be able to demonstrate that he is entitled to relief on those claims.  Therefore, in view of

the procedural barriers to Grounds 1 and 2, and the dismissal of those claims in this order, the Court

will decline to grant petitioner leave of court to conduct discovery on them.  *See Calderon v. United*

*States District Court* (*Hill*), 120 F.3d 927 (9th Cir. 1997) (discovery disallowed on unexhausted

habeas claims); *Calderon v. United States District Court* (*Roberts*), 113 F.3d 149 (9th Cir. 1997)

(same); *Calderon v. United States District Court* (*Nicolaus*), 98 F.3d 1102 (9th Cir. 1996), *cert.*

*denied*, 520 U.S. 1233 (1997) (same); *see also McDaniel v. United States District Court* (*Jones*),

1   127 F.3d 886 (9th Cir. 1997) (J. Rymer, concurring) (indicating that in exercising its discretion

2   whether to grant leave for discovery under Rule 6, the district court should take into consideration

3   whether the claims upon which discovery is requested have been exhausted in state court).

4          **IT IS THEREFORE ORDERED** that respondents' Motion to Dismiss (docket #85)

5   is **GRANTED IN PART AND DENIED IN PART**.  Grounds 1, 2, 4, 8, 12, 14, 15, 16, 17, 18, 22,

6   25, 26, 27, 28, 29, 31, 32, 33, 34, 35, 36, and 37, in the Second Amended Petition (docket #77), are

7   **DISMISSED**.  Ground 30 is **DISMISSED WITHOUT PREJUDICE**, as it is not yet ripe.

8          **IT IS FURTHER ORDERED** that petitioner shall have until and including

9   **April 25, 2008**, to file a Notice of Abandonment of Unexhausted Claim, indicating that he elects to

10  abandon Ground 7 of his Second Amended Petition.  If petitioner does not, within the time allowed,

11  file a Notice of Abandonment of Unexhausted Claim, abandoning Ground 7, petitioner's Second

12  Amended Petition (docket #77) will be dismissed, in its entirety, pursuant to *Rose v. Lundy*,

13  455 U.S. 509 (1982).

14         **IT IS FURTHER ORDERED** that petitioner's Motion for Leave to Conduct

15  Discovery (docket #84) is **DENIED**.

16         **IT IS FURTHER ORDERED** that respondents shall have until and including

17  **July 25, 2008**, to file an Answer, responding to the remaining claims in the Second Amended Petition

18  (docket #77):  Grounds 3, 5, 6, 9, 10, 11, 13, 19, 20, 21, 23, 24, and 38.

19         **IT IS FURTHER ORDERED** that, following service of respondents' Answer,

20  petitioner shall have **60 days** to file and serve a Reply.  Respondents shall thereafter have

21  **60 days** to file and serve a response to the Reply.

22         **IT IS FURTHER ORDERED** that, if petitioner wishes to request an evidentiary

23  hearing, petitioner shall file and serve a motion for an evidentiary hearing concurrently with, but

24  separate from, his Reply.  Any motion for an evidentiary hearing filed by petitioner before that time

25  may be considered premature, and may be denied, without prejudice, on that basis.  The motion  for

26  an evidentiary hearing must specifically address why an evidentiary hearing is required, and must

1   meet the requirements of 28 U.S.C. § 2254(e).  The motion must state whether an evidentiary hearing

2   was held in state court, and, if so, state where the transcript is located in the record.  If petitioner files

3   a motion for an evidentiary hearing, respondents shall file and serve a response to that motion

4   concurrently with, but separate from, their response to petitioner's Reply.  Thereafter, petitioner shall

5   have 20 days to file and serve a reply in support of the motion for an evidentiary hearing.

6

7              Dated this ___24th___ day of March, 2008.

8

9                                                    _____

10                                                   UNITED STATES DISTRICT JUDGE

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26